THOMAS OYAMA v. ANNETTE OYAMA and ALMA CARLTON, as Trustee, *et vir*.

189 So. 418
· Division A
Opinion Filed June 2, 1939

*Chas. F. Wells* and *Hilburn & Merryday,* for Appellant; *B. F. Brass,* for Appellees.

BUFORD, J.—This appeal brings for review an order dismissing a second amended bill of complaint with prejudice. It was sought by this suit to cancel a deed of conveyance made to Annette Oyama and mortgage made to Alma Carlton as Trustee for the use and benefit of Annette Oyama, both of which were made and executed pursuant to a certain agreement dated August 9, 1937, between Thomas Oyama and Annette Oyama as follows, to-wit:

"THIS AGREEMENT, Made and entered into on this Ninth day of August, A. D. 1937, by and between Thomas Oyama, party of the first part, and Annette Oyama, party of the second part, both of Daytona Beach, Volusia County, Florida,

"WITNESSETH: That for and in consideration of the sum of Ten ($10.00) Dollars, lawful money of the United States of America in hand paid by each of the parties hereto unto the other at or before the execution and delivery of this agreement and in consideration of the premises and agreements hereinafter set forth, and in consideration of other good and valuable considerations mutually moving between the parties hereto, the existence of which is hereby

mutually acknowledged by said parties, the said parties hereto covenant and agree as follows: to-wit:

"1. The said party of the first part covenants and agrees and hereby acknowledges that within and during a period of ninety days last preceding the date of this agreement he has violated and breached his marriage vows and obligations in such form and manner as to entitle the said party of the second part to an absolute divorce from him under the Laws of the State of Florida and elsewhere; that the said party of the second part has discovered and been advised of the conduct of the said party of the first part consisting of such violations and breaches and has not condoned the same either in whole or in part, and that on account of such violations and breaches the said party of the second part has fully, finally, conclusively and unalterably determined to secure and procure an absolute divorce from the said party of the first part.

"2. The said party of the second part covenants and agrees that the matters and things set forth in the first paragraph hereof are true, and that she has employed B. F. Brass, attorney-at-law, of Daytona Beach, Florida, to advise with her concerning said matters, to advise and direct her and negotiate for her in the making of this agreement, and to effectuate the same, and to institute and conclude with all reasonable and convenient speed a suit for absolute divorce for her against the said party of the first part, and all with the knowledge and consent of the said party of the first part.

"3. It is mutually covenanted and agreed by and between the parties hereto:

"A. That the said party of the first part simultaneously with execution and delivery of this agreement is executing (joined by the said party of the second part), and delivering to the said party of the second part, a warranty deed

conveying to her all properties owned by the said party of the first part and located in Block 7, Rogers Seabreeze, according to a plat thereof duly recorded in the Public Records of Volusia County, Florida, which properties have an appraised and agreed value of Thirty-nine Thousand Five Hundred ($39,500.00) dollars, and at the same time is executing and delivering to Alma Carlton, at Trustee, of Daytona Beach, Florida, his negotiable promissory note payable to her order in the principal sum of Fifty-three Thousand Five Hundred Dollars ($53,500.00) payable on or before fifteen (15) years from date, and bearing interest at the rate of five per cent per annum, payable quarterly from date, and at the same time is executing (joined by the said party of the second part), and delivering to the said Alma Carlton, as Trustee, a first mortgage securing payment of said promissory, and covering Lots 20, 21, 22, 23 and 24, Block 5, Rogers Seabreeze, and certain personal property.

"B. That the said Thomas Oyama has represented and does hereby covenant and agree that all of the properties described in said deed and in said mortgage are free and clear of all incumbrances, save and except only taxes, assessments, leases and tenancies.

"C. That the said party of the first part covenants and agrees that said warranty deed and said note and mortgage are being executed and delivered by him as and for and in lieu of support money, maintenance, alimony, dower rights and any and all other rights, claims or demands of any nature or character whatsoever (except the right of divorce) ; past, present and future, which the said party of the second part now has or hereafter can or may have against the said party of the first part and/or his properties or estate, and as and for a full, complete and final settlement of the same.

"D.   That the said party of the second part covenants and agrees that she is accepting the execution and delivery of said warranty deed and said note and mortgage as and for and in lieu of support money, maintenance, alimony, dower rights, and any and all other rights, claims or demands (except the right of divorce) of any nature or character whatsoever; past, present or future, which she now has or hereafter can or may have against the said party of the first part and/or his properties or estate, and as and for a full, complete and final settlement of the same.

"E.   That the said Alma Carlton, as Trustee, shall hold said notes and mortgage for the use and benefit of the said party of the second part, and, upon the said party of the second part securing and procuring the divorce hereinbefore referred to, shall thereupon transfer, assign and set over unto the said party of the second part said note and mortgage, and thereupon the said party of the second part shall own, have and hold said note and mortgage, with all the rights and benefits thereof and therefrom, as and for her own sole and absolute property, and in the event of the death of the said Annette Oyama prior to her securing and procuring such divorce, thereupon the said Alma Carlton as such Trustee, shall transfer, assign, set over and deliver said note and mortgage to such person or persons as may be entitled to the same under and by virtue of and in accordance with the terms and provisions of the Last Will and Testament of the said party of the second part.

"F.   That in making of this agreement in making or arriving at the settlement herein set forth the parties hereto have taken into consideration any right, title, interest, claims or demands of any nature or character whatsoever which the said party of the first part may have in and to any properties or the estate of the said party of the second part, and that this agreement and settlement herein set

forth is based upon such accounting and consideration, and the said party of the first part hereby acknowledges that he has no right, title, interest, claims or demands of any nature or character whatsoever against the said party of the second part and/or her properties or estate.

"4. It is further mutually covenanted and agreed by and between the parties hereto that any and all costs, charges and expenses heretofore or hereafter incurred or sustained by the said party of the second part in connection with or as a result of said breach and violation, including the costs, charges and expenses of investigations, detectives, traveling expenses, and that the costs, expenses, charges and fees of the said B. F. Brass for services heretofore or hereafter rendered to the parties hereto, either or both, in connection with all the aforesaid matters and things, whether referred to herein or not, up to the point and time of the institution of said divorce suit, shall be borne and paid likewise by the parties hereto equally so that each party bears and pays one-half of the total thereof and therefor; that the party of the first part shall pay the costs and expenses of the divorce suit to be instituted by the party of the second part, including her attorney's fees for services rendered in connection therewith and that all attorney's fees to be paid by the parties hereto either equally or by the said party of the first part shall be such reasonable sums as may be fixed by the Circuit Judge having jurisdiction of said divorce subject-matter.

"5. It is further mutually covenanted and agreed by and between the parties hereto that so long as the party of the first part procures passes to the moving picture theatres in the City of Daytona Beach, or any of them, he will assign or procure one-half of the number of such passes secured to the said party of the second part.

"6. It is further mutually covenanted and agreed by and

between the parties hereto that nothing in this agreement shall be considered to be or construed to be a condonation of any marital offenses committed by the said party of the first part.

"IN WITNESS WHEREOF, the said parties have hereto set their hands and seals on this day and year first above written."

The bill alleged in effect that all of said·paper writings were null, void and of no effect because they were executed by Thomas Oyama under duress.

The bill alleges in effect that Annette Oyama, Alma Carlton and her husband Doyle I. Carlton, and one Agnes Manning entered into a conspiracy to entrap the plaintiff into a criminal act, and thereby coerce plaintiff to convey his property to Annette Oyama, and that plaintiff was entrapped by Agnes Manning pursuant to such conspiracy and induced by Agnes Manning to take a trip with her in an automobile from Daytona Beach, Florida, to Atlantic City, New Jersey, and that when complainant and Agnes Manning had reached New Jersey and taken a hotel room together Agnes Manning notified the Carltons and that the Carltons got·in touch with detectives and caused complainant and Agnes Manning to be apprehended together in a bed room, each occupying a separate bed, at about four o'clock in the morning, and that thereupon complainant and Agnes Manning were thrown into jail; that Annette Oyama was notified of the escapade and the conditions under which Oyama and Agnes Manning were apprehended and that she went to Atlantic City, New Jersey, and there swore out a warrant for the complainant, charging him with adultery, and then told him that she was forever through with him and that she was going to divorce him immediately upon her return to Florida and that unless he made a property settlement with her that she would prosecute him for adultery

in New Jersey and also cause him to be prosecuted in Federal Courts for violating the Mann Act.

The bill further alleges that because of complainant's fear of prosecution, he agreed to the property settlement and executed the conveyance, *supra*.

The bill further alleges:

"Plaintiff alleges that notwithstanding the fact that the defendant Annette Oyama, his wife, has been so cruel and unkind to him in cheating and defrauding him out of his property and money, that he still recognizes his legal duty to support her, so long as she is his wife, and is therefore willing to do so, but that the said defendant has applied for a divorce from the plaintiff in the Circuit Court of St. Johns County, in which said divorce said defendant has stated therein, that she does not desire any alimony, suit money; or funds for maintenance, but the plaintiff is willing and will pay such amount as said court or any other court having jurisdiction of the divorce proceedings between them, may award; but plaintiff alleges that any such matters of support of said defendant, Annette Oyama, should be decided in said divorce proceedings."

The order dismissing the second amended bill of complaint does not state the ground upon which the bill is dismissed. But aside from the question of whether or not the bill contains equity, the allegations of the bill are sufficient to show that the subject matter of the bill can, and should if at all, be properly litigated in the suit for divorce which the bill alleges had already been instituted in the Circuit Court of St. Johns County. If it be true that Annette Oyama connived at and procured the alleged adultery to be committed, then she is estopped from procuring a divorce on that ground and whether or not she did that is an issue which the defendant in the divorce suit must set up in that suit and is an issue which final decree in that suit will

forever set at rest. Mabson v. Christ, 104 Fla. 604, 140 So. 671; Wade v. Clower, 94 Fla. 817, 114 So. 548; Jones v. Morgan, 59 Fla. 542, 52 So. 140; Prall v. Prall, 58 Fla. 496, 50 So. 867, 26 L. R. A. (N. S.) 577; Tilton v. Horton, 103 Fla. 497, 137 So. 801, 139 So. 142; Sauls v. Freeman, 24 Fla. 209, 4 So. 525, 12 Am. St. Rep. 190; Hay v. Salisbury, 92 Fla. 446, 109 So. 617; Peacock v. Feaster, 52 Fla. 565, 42 So. 889; Barse v. Whaley, 102 Fla. 404, 135 So. 879."

The alleged property settlement is shown by the allegations of the bill to be so allied with the grounds for divorce and with the divorce action that it would be improper after the Circuit Court in one county had assumed jurisdiction in the divorce proceedings for the Circuit Court in another county to assume jurisdiction to determine the validity of property settlements entered into between the parties and pursuant to which the divorce suit had been filed in the other county.

It is too well settled to admit of question that, where a court of equity takes jurisdiction of a case for one purpose it will proceed with the determination of all the matters properly presented and will grant full relief. Commercial Bank v. First Natl. Bank, 75 Fla. 634, 79 So. 446; Szabo v. Speckman, 73 Fla. 374, 74 So. 411, L. R. A. 1917D, 357; Donegan v. Baker, etc., Co., 73 Fla. 241, 74 So. 202; Farrell v. Forest Inv. Co. 73 Fla. 191, 74 So. 216, 1 A. L. R. 25; Leesburg State Bank v. Lyle, 99 Fla. 535, 126 So. 791; Commercial Bank v. First Natl. Bank, 80 Fla. 685, 87 So. 315; Ringling Estates v. White, 105 Fla. 581, 141 So. 884; Etter v. State Bank, 76 Fla. 203, 79 So. 724, 726.

The allegations of the bill here under consideration are such that it is readily apparent that if the complainant in this suit intends to contest the validity of the property

settlement then he should be required to present his contest in the divorce suit.

Particularly is this true because the bill of complaint here alleges that Annette Oyama, in consideration of the proposed property settlement, agreed that when she filed her divorce proceedings she would not ask for suit money, alimony or a property settlement and the bill further makes allegations which show that she has abided by that provision of the agreement and has filed the suit for divorce not claiming alimony, suit money or property settlement, and, under the facts as shown by the allegations of this bill, she should not be deprived of such rights as she may have if the complainant Thomas Oyama can successfully repudiate the agreement and conveyance referred to.

Because of our views herein expressed, we refrain from expressing any opinion as to whether or not Thomas Oyama is entitled to a cancellation of the conveyances and agreement herein referred to, but only hold that if he seeks to cancel the same he must do so in the divorce suit where full and complete justice can be done all parties and the respective rights of each arising out of the alleged grounds for divorce, the alleged property settlement and the alleged suit for divorce may be adjudicated.

For the reasons stated, the order appealed from is affirmed, in so far as it dismisses the bill of complaint. But the order of dismissal should be without prejudice to the issues presented being determined in the divorce suit or in a suit supplemental thereto.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.