### JACQUELINE ARCHER STEWART v. GLENN STEWART

29 So. (2nd) 247           June Term, 1946
November 26, 1946         Special Division B
On rehearing En Banc February 7, 1947
Further rehearing denied March 4, 1947

*L. S. Julian, Shutts, Bowen, Simmons, Prevatt & Julian,* for appellant.

*Joseph A. Scarlett, J. Lewis Hall* and *Hull, Landis, Graham & French,* for appellee.

PER CURIAM:

A perusal of the record in this case has led us to the conviction that the master and the chancellor ruled correctly on all issues involved except the one whether the appellee Glenn

Stewart had been guilty of adultery as charged in the answer. We are of the opinion that this misconduct on his part was established and that, both parties being at fault, the case should have been dismissed.

It is, therefore, the order of this court that the final decree be reversed with directions to dismiss the bill of complaint and the counterclaim.

CHAPMAN, C. J., BROWN and THOMAS, JJ., and BARNS, Circuit Judge, concur.

ON REHEARING GRANTED

BARNS, J.:

The appellee brought suit for divorce and appellant answered and counterclaimed for separate maintenance. The issues were referred to a master who was authorized and directed to make findings of fact. The master found the equities for the appellee husband and the Chancellor entered a final decree granting him a divorce and denying the appellant wife separate maintenance. The wife appeals.

The parties charge each other with misconduct, misbehavior, desertion and general abandonment of the marriage obligations. Generally speaking, judging from the cold record it might reasonably be said that each proved his or her charges, however, the master had the parties and the witnesses before him and had better opportunity to judge of the merits of the controversy than can possibly be gleaned from the record by us. It is evident from the record that each of the parties have been derelict toward discharging the obligations of marriage and it might reasonably be said that recrimination has been established by each against the other if all the testimony is to be accepted at face value. However, the master and Chancellor found the equities with the plaintiff and it has not been made to affirmatively appear that inequity has been done by the Chancellor by his decree of divorce.

The application of the doctrine of recrimination in divorce cases is an outgrowth of the equity maxim that "he who comes into equity must come with clean hands."

It is not an absolute but a qualifying doctrine. If it were

to be applied strictly great inequity would be done, for it so often happens that neither party to a suit has been free from fault. This is especially true in divorce matters generally, and in this case in particular.

The principle is most applicable when a party seeks to take advantage of an act or omission which he has himself induced.

The maxim may be invoked because of the very nature of the wrong either for the benefit of the Court and society or for the benefit of the defendant when to do otherwise would be to allow plaintiff to take an unfair advantage of the defendant.

The application of the doctrine of recrimination like the doctrine of clean hands is a matter of sound judicial discretion dependent on public policy, public welfare and the exigencies of the case at bar.

Pursuant to the order granting a rehearing, able arguments of counsel for the respective parties have been heard, pertinent parts of the pivotal testimony have been inspected, rechecked and studied and the Court again being advised of its judgment to be given in the premises, it is our view and holding that the order of reversal be set aside and held for naught and that the order and decree of the Chancellor below be and the same is hereby affirmed.

Affirmed.

TERRELL, CHAPMAN and ADAMS, JJ., concur.

BUFORD, J., concurs specially.

THOMAS, C. J., and FABISINSKI, Associate Justice, dissent.

BUFORD, concurring specially:

I concur in what is said and in the conclusion reached in the opinion prepared by Mr. Justice BARNS on rehearing granted; but, in addition thereto I am constrained to say that I have carefully studied the record and, as I see it, the record contains a great deal of testimony pro and con which is strong enough to create a very substantial suspicion that the plaintiff has been guilty of adultery but I think the record fails to reveal any *substantial legal* evidence to *establish* the *fact* that he was guilty of adultery.

For the reasons stated in the majority opinion, and also for this additional reason, I concur in the view that the decree of the Chancellor should be affirmed.

FABISINSKI, Associate Justice, Dissenting:

I recognize the force of the excellent and carefully considered opinion of the majority of the court. I think it will meet the approbation of the majority of the bar of the State of Florida, especially of those who have had the most to do with the many distressing situations which grow out of the married state. Nevertheless it introduces a new doctrine into the law of divorce in this State, a doctrine which, despite its appeal, has been resisted by the overwhelming weight of decisions of final courts of appeal throughout the nation, after carefully weighing its merits. This is true not only in cases decided in a bygone era, but in many cases decided quite recently. So that it cannot be yet said that there is a marked trend toward a judicial change in the old conceptions of recrimination as a defense in divorce actions.

It is true that enough decisions have accumulated over the years to the same general effect as is enunciated in the majority opinion, to warrant a sub-title in both Corpus Juris and in American Jurisprudence on the doctrine of "comparative rectitude." But a study of the cases cited in the footnotes will demonstrate that, with the exception of one or two jurisdictions, it has not been followed. North Carolina decisions are the result of a peculiarity of its statutes. Pennsylvania seemed to follow such a doctrine in some early cases, but is not committed. Michigan experimented with it, and finally rejected it. Washington (and possibly Texas) follow it more or less consistently. Maryland rejected it point blank. Without covering the whole field, it will be found that in spite of a great temptation to become more liberal, our courts have quite consistently resisted such temptation.

Our state has established the doctrine by statute. If it is to be adopted in Florida, I think we should "pass a law."

I reluctantly dissent from the opinion of the majority.

THOMAS, C. J., concurs.