56 So.2d 441 (1951)
TODD
v.
TODD.
Supreme Court of Florida, Division A.
December 21, 1951.
Rehearing Denied February 15, 1952.
Smith & Axtell, Jacksonville, for appellant.
P. Donald DeHoff, Jacksonville, for appellee.
TERRELL, Justice.
Appellee, a Lieutenant in the Naval Air Force, married appellant December 9, 1944, at the United States Naval Air Station, Quonset Point, Rhode Island. Twins, Parmela and Patricia Todd were born to them October 28, 1946, and a son James Franklin Todd, Jr. was born March 14, 1948. They lived at several army posts during their married life, the last of which was the Naval Air Base at Jacksonville, Florida, where this suit for divorce was filed July 23, 1949. The amended bill of complaint charged (1) habitual intemperance, (2) extreme cruelty, (3) adultery and (4) that defendant was not a fit person to have the care and custody of their minor children.
Defendant filed her petition for temporary attorneys fees, court costs and alimony. The petition also alleged that the children were spirited away from her by complainant while she was being hospitalized and could not look after them. Her petition prayed that the children be returned to her custody. Her prayer was denied but she was granted the right of visitation during certain hours on Monday of each week. She was also granted temporary alimony.
Defendant then filed her answer to the amended bill of complaint in which she denied every material allegation thereof and alleged affirmatively (1) that complainant furnished her such alcoholic liquors as she consumed, (2) condonation, (3) she counterclaimed, charging extreme cruelty in that complainant repeatedly beat her brutally and charged her falsely with adul tery, (4) that complainant was not a fit person to have the custody of their children *442 (5) Prayed that she be granted a divorce and custody of the minor children, and challenged the sufficiency of plaintiff's residence in Florida to sue for divorce. Plaintiff denied the material allegations of defendant's counterclaim. A special master was appointed, evidence was taken and on final hearing plaintiff was granted a divorce from defendant. He was also awarded custody of the minor children subject to one months custody by the defendant, each year, and three hours visitation each Saturday when stationed near enough to permit. A petition for rehearing was denied and the defendant appealed.
A spate of questions are submitted for our determination but appellant's main grievance challenges that part of the final decree granting complainant a divorce and awarding him custody of the minor children. The other questions challenge the sufficiency of the complainant's Florida residence to support his suit for divorce, whether or not correct procedural requirements were followed and whether or not there was condonation, reconciliation or basis for application of the doctrine of comparative rectitude as promulgated in Stewart v. Stewart, 158 Fla. 326, 29 So.2d 247, 170 A.L.R. 1073.
The chancellor approved the finding of the special master that the plaintiff was a bona fide resident of the State of Florida for more than ninety days before he filed his suit for divorce. There is support in the record for this finding. The Master and the chancellor also found that there was no evidence "of any person at any time anywhere" to sustain the charge of adultery on the part of defendant. The decree of divorce was granted solely on the charge of habitual intemperance on the part of defendant.
Habitual intemperance on the part of defendant is a ground for divorce in this state. As such it has been defined as the excessive use of intoxicating drinks. It is said to have been consummated when the will is dethroned by frequent indulgence and failure to control one's appetite for strong drink. It has also been applied to one whose habit of indulgence in strong drink is so fixed that he cannot resist getting drunk any time the temptation is offered. Inebriety must be frequent, excessive and be the dominant passion. The habitual but moderate use of intoxicating liquors does not meet the test. McGill v. McGill, 19 Fla. 341; Kennedy v. Kennedy, 101 Fla. 239, 134 So. 201; Ring v. Ring, 112 Ga. 854, 38 S.E. 330; Blunk v. Blunk, 327 Ill. App. 666, 64 N.E.2d 787; Kessel v. Kessel, 131 W. Va. 239, 46 S.E.2d 792; Florida Law of Family, Carson 429.
The proof adduced falls short of the standard required by these cases. It shows that when plaintiff married defendant he carried her to an apartment that was well stocked with intoxicating liquors, that he never allowed his stock to become depleted, that throughout their married life they drank together. Most of the liquor she drank was bought and served by complainant. They visited the officers clubs and drank with friends, they went to parties and drank. There is no showing whatever that she became a confirmed alcoholic, that she ever purchased liquor, that she was ever treated for alcoholism, that she was ever arrested for being intoxicated or that alcoholism ever became a fixed habit with her. It is shown that she drank at intervals and at times got drunk but much of the evidence was hearsay and for this and other reasons should not have been considered.
Most of the evidence supporting the charge of habitual intemperance is that of the plaintiff himself. Several witnesses testified that defendant indulged at times to the extent of getting drunk, but there is no showing that the practice had become a fixed habit. One witness testified that defendant neglected her home and children but the decided weight of the evidence on this point is to the effect that she was a good mother, looked after her home and took good care of her children. It is shown that complainant repeatedly charged defendant with adultery but failed to prove any basis whatever for the charge, that he slapped and beat her so as to leave marks and abrasions on her body, that he dragged her over the floor by the hair, that he kept liquor in the home all the time they were *443 married but kept it under lock and key and accused her of breaking into it but he failed to prove any of these allegations.
Even if the evidence was sufficient to support the charge of habitual intemperance we do not think the complainant has any standing in a court of equity to seek a divorce on that ground. He should not be permitted to claim a divorce from his wife on the ground of habitual intemperance when the evidence conclusively shows that he bought and gave her most of the liquor she consumed, that he kept his home constantly and adequately supplied with liquor, that he frequently drank with his wife, that they went to cocktail and other parties where liquors were consumed and drank together and that he otherwise encouraged her to drink and kept her eternally in a liquor invironment. Who knows that defendant would have become addicted in any way if she had not been encouraged by the husband in social drinking. Habitual intemperance is made a ground for divorce because of the physical, social, nervous and economic hazard it produces, if moral degeneracy materializes it is a by-product of the habit. Intoxication does not stain the character like stealing, robbery and other acts involving moral turpitude. Smut on the character from these will stick but one who gets drunk may be all right tomorrow. If moral degeneracy follows it will be remote when the drink habit has mastered the victim. Scientific study shows that even moderate tippling affects the nervous faculties and if taken to excess may temporarily frustrate them, but that it takes continued, frequent and excessive drinking to bring about habitual intemperance as ground for divorce.
As to the custody of the three minor children, it is shown that they were taken by the plaintiff while defendant was hospitalized and was unaware of the taking. The defendant made two attempts to recover them but the chancellor found that "from the standpoint of present fitness of the parties and the interest of the children, that the children should remain in custody of the plaintiff, father, with visitation privileges to the defendant." It will be noted that the chancellor based custody on the "present fitness of the parties." We are not disposed to disagree with this finding because it shows on its face that it was predicated on "present fitness" at which time the mother was ill and the father was still in possession of his health and the meal tickets. In his final decree the chancellor retained jurisdiction of the cause and the children to modify as to alimony and custody should changed circumstances require.
It is accordingly our view that appellee is not in equity with clean hands. The final decree is therefore reversed in so far as it grants him a divorce but with directions to grant appellant a divorce on her counterclaim with permanent alimony. The material allegations of the counterclaim were amply supported by the evidence. It shows that appellee caused appellant physical pain and suffering by slapping and beating her so as to leave marks and abrasions on her body, and that he caused her intense humiliation, mental anguish and suffering by charging her repeatedly with adultery and failing to produce evidence "of any person at any time anywhere" to support the charge.
That part of the final decree awarding the custody of the three minor children to appellee is affirmed without prejudice to appellant to apply to the chancellor for their custody including an award of compensation for their support. There is nothing in the record that commends the husband as well fitted to have the custody of the children as the wife and anytime she can show that she has recovered her health and is no longer addicted to the use of alcoholics, the children being of tender years, she should be awarded their custody.
The final decree is affirmed as to costs, attorneys fees and other charges. Other questions raised have been considered but it becomes unnecessary to discuss them. It follows that the decree appealed from is affirmed in part and reversed in part.
Affirmed in part, reversed in part.
SEBRING, C.J., and ROBERTS and MATHEWS, JJ., concur.