102 So.2d 748 (1958)
Mark E. BENSON, Appellant,
v.
Mildred Estella BENSON, Appellee.
No. 57-356.
District Court of Appeal of Florida. Third District.
April 24, 1958.
Rehearing Denied June 4, 1958.
*749 Gustafson, Persandi & Vernis, Coral Gables, for appellant.
Ferrell & Young, Miami, for appellee.
CARROLL, CHAS., Chief Judge.
This appeal is from a divorce decree rendered by the Circuit Court of Dade County. The appellant, who was the plaintiff below, filed suit for divorce against his wife on October 31, 1956, charging cruelty, ungovernable temper and adultery. The appellee answered denying the husband's allegations and counterclaimed for divorce charging him with cruelty, intemperance and adultery. There were no children involved. The parties owned their furnished home as tenants by the entireties.
Following trial of the suit before him, the chancellor found the equities were with the defendant wife, denied the plaintiff's prayer for divorce, and granted the defendant wife a divorce and other relief on her counterclaim, including permanent alimony of $50 a week, and awarded her the husband's interest in the home. The final decree is not lengthy, and reads as follows:
"The court has considered carefully the evidence submitted at the trial of the cause, and finds that the equities are decidedly with the defendant wife and that she is entitled to the relief accorded by this decree.
"The bonds of matrimony between the plaintiff, Mark E. Benson, and the defendant and counterclaimant, Mildred Estella Benson, are dissolved and such parties are divorced, each from the other, absolutely and forever.
"The plaintiff is required to make and execute, and to deliver to the defendant and counterclaimant, immediately on the entry of this decree, a good and sufficient deed in and by which he shall convey to her all his right and title to, and interest in, that certain real property mentioned and referred to in the paragraph numbered 9 of his complaint (located at 5831 Southwest Fifteenth Street in the City of Miami, Dade County, Florida) and a good and sufficient instrument of assignment in and by which he shall assign and transfer to her all his right *750 and title to, and interest in, all furniture, furnishings and equipment now in the dwelling on such real property.
"The plaintiff is further required (a) to pay to the clerk of this court, for the use and benefit of the defendant and counterclaimant, and for her maintenance and support, the sum of $50 on May 17, 1957, and a like sum on Friday of each week thereafter until she dies or remarries; (b) to pay to Messrs. Ferrell and Young, her attorneys, immediately on the entry of this decree, the sum of $500 to compensate them reasonably for the professional services rendered by them in her behalf in this suit; and (c) to pay all unpaid costs of this suit and to reimburse the defendant and counterclaimant for such costs, if any, as she has paid.
"This is a case in which the court would prefer to award `a lump sum' as permanent alimony (pursuant to the provisions of section 65.08 of the Florida Statutes); but the resources of the plaintiff are not such as to enable him to make an adequate lump sum payment. The court, therefore, has substituted the foregoing financial requirements."
The appeal as presented and argued to this court is restricted to challenging the allowance of alimony and the granting of the husband's interest in the residence premises to the wife.
It is shown that the separation of the parties occurred in July of 1955, when the husband moved out and left the wife. By agreement the wife was allowed the use of the home, and the husband furnished her an automobile and $50 a week for her support, and undertook to pay her medical and dental expenses. Her mother, who had been living with them, continued to live with the defendant wife in the home. Some time in August the defendant wife was joined in the home by a doctor who continued to live there in the household. Early in September the defendant's father also moved into the house. The four of them continued to live there in the two-bedroom house, until October of the next year when the defendant wife and the doctor moved to a home owned by him in Coral Gables, where she and he continued to reside until some time after the divorce suit was commenced.
The appellant argues that as the wife's alleged adultery was established on the record, she was barred from receiving alimony by section 65.08, Fla. Stat., F.S.A. The appellee contends that for this court to determine from the record whether the wife was shown to have been guilty of adultery would be substituting its judgment for that of the chancellor on the evidence. While the position taken by the appellee is correct to the effect that an appellate court should not substitute its judgment for that of a jury or chancellor arrived at by resolving conflicts of sufficient evidence, that point is not applicable here. This is so, because the chancellor did not make any findings of fact, one way or the other, relating to the issue as to adultery of the wife.
The finding made by the court was "that the equities are decidedly with the defendant wife and that she is entitled to the relief accorded by this decree." As the relief accorded her included alimony, and as the reason or basis on which it was granted is not shown in the decree, we must assume that the trial court either (1) determined that the wife was not guilty of adultery, or (2) found that the wife was guilty of adultery but that the husband could not take advantage of her adultery, which in turn would require a finding that the conduct and circumstances relating to the husband were sufficient to invoke and apply against him the doctrine of connivance.
We need devote little time to the question of whether adultery on the part of the wife was shown and established on *751 the record. If the trial court concluded, on this record, that the wife was free from adulterous conduct, then such a finding was plainly wrong and contrary to the manifest weight of the evidence. So clearly and definitely is the adultery of the wife established on the record, for the period from August 1955, one month after the separation, until the time of the filing of the divorce suit on October 31, 1956, that there is no necessity to specify the details of the evidence, which could not reasonably be interpreted as showing other than that the defendant wife and her doctor lived, during the time in question, openly in a state of adultery. To the contrary there was only the protestation of the defendant wife that the relationship with her paramour was not adulterous, which under the circumstances was unacceptable.
"To prove adultery the law does not require that specific acts be attested by eyewitnesses. The rule approved by the weight of authority is that if the circumstances proven are such as to lead the guarded discretion of a reasonable and just man to the guilt of the participants that is sufficient. Heath v. Heath, 103 Fla. 1071, 138 So. 796, 82 A.L.R. 537; Thayer v. Thayer, 101 Mass. 111, 100 Am. Dec. 110. In Atha v. Atha, 94 N.J. Eq. 692, 121 A. 301, it was held that if desire and opportunity were proven adultery would be presumed." McMillan v. McMillan, 120 Fla. 209, 162 So. 524, 525. See also Engebretsen v. Engebretsen, 151 Fla. 372, 11 So.2d 322; Blue v. Blue, Fla. 1953, 66 So.2d 228; Parker v. Parker, Fla.App. 1957, 97 So.2d 136; Goslinowski v. Goslinowski, Fla.App. 1957, 97 So.2d 723.
Assuming that the court found that the wife was guilty of adultery after the separation, the question then to be determined is whether the prohibition in section 65.08, Fla. Stat., F.S.A., to the effect that "no alimony shall be granted to an adulterous wife," is eliminated in the wife's favor under the doctrine of connivance.
If the husband was guilty of acts constituting grounds for divorce, and if the separation of the parties was the result of his misconduct towards the wife, the court was justified in refusing to grant the husband's prayer for divorce and in granting the wife a divorce against him, even though she was clearly shown to have been guilty of adultery after the separation. See Stewart v. Stewart, 158 Fla. 326, 29 So.2d 247, 170 A.L.R. 1073. But the discretion thus reposed in the chancellor to excuse the wife for her adultery in determining the equities of the parties as they relate to the granting or denial of a divorce, does not permit excusing the adultery for the purpose of enabling a grant of alimony, because of the statutory interdiction.
The doctrine of connivance is dealt with at length in 17 Am.Jur., Divorce and Separation, §§ 250-259, pp. 431-438. See also Keezer on the Law of Marriage and Divorce, 3d Ed., §§ 299, 516. It has been sufficiently recognized and defined by the Florida Supreme Court. McMillan v. McMillan, supra, 120 Fla. 209, 162 So. 524; Oyama v. Oyama, 138 Fla. 422, 189 So. 418, 122 A.L.R. 526; Todd v. Todd, Fla. 1952, 56 So.2d 441, 29 A.L.R.2d 920.
In McMillan v. McMillan, supra, 162 So. at page 526, the Supreme Court said:
"`To connive at' means to feign ignorance of, to wink at, to pretend not to know, to covertly approve by passive consent. If forced upon her, adultery on the part of the wife does not constitute ground for divorce, neither can the husband claim a divorce on the ground of adultery when his conduct conduced to or aided it. Neglect of the husband to provide support for his wife or in any manner to concern himself about her may constitute misconduct conducing to her adultery, but the mere fact of living apart is no justification for it. 10 C.J. 77, par. 172.
"In 19 C.J. 91, it is pointed out that mere passive permission or misconduct does not make the party giving the *752 permission guilty of connivance if he does nothing to encourage the other to commit the offense, and does not directly or indirectly throw opportunities therefor in the way. Connivance will not be implied from mere negligence, folly, dullness of apprehension, or indifference; nor as a rule can connivance be implied from desertion, though under some circumstances it may be.
"In Wilson v. Wilson, 154 Mass. 194, 28 N.E. 167, 12 L.R.A. 524, 26 Am. St.Rep. 237, it was held that the fact that a husband suspects his wife of infidelity, watches her for the purpose of obtaining proof of it, and stands by and sees her go with another man, is not sufficient to support a charge of connivance, although he in fact wishes her to commit adultery in order that he may obtain a divorce. Herriford v. Herriford, 169 Mo. App. 641, 155 S.W. 855; Farwell v. Farwell, 47 Mont. 574, 133 P. 958, Ann.Cas. 1915C, 78; Puth v. Zimbleman, 99 Iowa 641, 68 N.W. 895."
The McMillan case shows that connivance involves active or passive approval or consent to the wife's adultery, or that the condition was forced upon her by placing her in the company of lewd persons, or by deserting her in the sense of "putting her out on the street" without any adequate support. On the other hand, the McMillan case shows that connivance will not be implied from desertion (other than as outlined above) or from negligence or indifference on the husband's part.
Our examination of the record fails to show facts or conduct on the part of the husband from which he could be found guilty of connivance. That he was guilty of acts constituting grounds for divorce as charged, and that he may have left her without reason, would not be connivance. The wife was not "put out on the street." The separation was accompanied by an agreement between them under which she continued to live in the home of the parties and was furnished support, including an automobile for her use and $50 a week. Nor can it be said that she was placed in bad company or in a situation where adultery was invited or could be an intended or even expected result, because she was left in the shelter and safety of her own home, and in the company of her mother. If subsequently she chose, as she did, to take the doctor into her home, the choice was hers, and not attributable to her husband from whom she was separated at the time. The record reveals no evidence that the husband planned the situation, or that he was conscious of it until long after it had begun. After having an investigation made, the husband stopped paying the support money, and proceeded to file a suit for divorce.
Moreover, the doctrine of connivance will not serve to erase the effect of a wife's adultery unless she pleads connivance as a defense to the charge, and the issue thus is made and tried. This was the holding of the Supreme Court in Oyama v. Oyama, supra, 138 Fla. 422, 189 So. 418, 421, where the court said:
"The order dismissing the second amended bill of complaint does not state the ground upon which the bill is dismissed. But aside from the question of whether or not the bill contains equity, the allegations of the bill are sufficient to show that the subject matter of the bill can, and should if at all, be properly litigated in the suit for divorce which the bill alleges had already been instituted in the Circuit Court of St. Johns County. If it be true that Annette Oyama connived at and procured the alleged adultery to be committed, then she is estopped from procuring a divorce on that ground and whether or not she did that is an issue which the defendant in the divorce suit must set up in that suit and is an issue which final decree in that suit will forever set at rest. * * *."
*753 The Honorable Vincent C. Giblin, the chancellor before whom the case was tried and who entered the decree, and who is known to have made a practice of personally hearing all such suits, no doubt has heard as many, if not more divorce suits than any judge in the history of this state. The presumption of correctness which is to be accorded to the trial court's findings and decree gains weight through the chancellor's experience in these cases. For those reasons it is with reluctance that we reverse the award of alimony which the chancellor decreed, but we have concluded that connivance or conducing to adultery by the husband was not made out on the record.
We further hold that the record does not support the award to the wife of the husband's interest in the furnished home which they owned as tenants by the entireties.
Section 689.15, Fla. Stat., F.S.A., provides that "in cases of estates by entirety, the tenants, upon divorce, shall become tenants in common." In Valentine v. Valentine, Fla. 1950, 45 So.2d 885, 886, it was held that it was error for the court, upon granting a divorce, to direct disposition of one party's interest in property held by the entireties, to the other party, the court saying: "Once the marriage contract was dissolved and the proportionate share of each in the estate was fixed, appellant and appellee became tenants in common, and thereafter it was for them to determine whether the property should be partitioned or whether one should purchase the interest of the other." As recognized exceptions, the husband's interest in property owned by husband and wife as tenants by the entireties may be awarded to the wife as lump-sum alimony (section 65.08, Fla. Stat., F.S.A.; Reid v. Reid, Fla. 1954, 68 So.2d 821), and the wife may be given part or all of the husband's record interest in property owned by them as tenants by the entireties to the extent that she establishes an equity therein based on her contributions thereto. Heath v. Heath, 103 Fla. 1071, 138 So. 796, 82 A.L.R. 537; Foreman v. Foreman, Fla. 1949, 40 So.2d 560.
In the present case the husband's interest in the property could not be granted to the wife as alimony, for the reasons set out above in this opinion. There is no other support for the provision of the decree ordering conveyance of the husband's interest to the wife.
The court recognized the property as being owned by them as tenants by the entireties. Other than the wife's statement, "we both worked for it," there was no evidence showing any contribution by her to establish an equity greater than the one-half interest therein which was hers as a result of the ownership in an estate by the entireties. Without pleadings and evidence establishing an equity or right to the husband's share or interest in the property, its ownership is controlled by the provision of section 689.15 that the parties own the property in question as tenants in common. Heath v. Heath, supra; Eakin v. Eakin, Fla. 1958, 99 So.2d 854.
The final decree is affirmed except the provision granting alimony and the provision granting the wife the husband's interest in the furnished home, as to which two provisions the decree is reversed.
Affirmed in part and reversed in part.
HORTON and PEARSON, JJ., concur.