**BOSTWICK v. BOSTWICK (No. 2).**

No. 66-C-1920.

Circuit Court, Palm Beach County.

July 15, 1970.

Adams & Adams, West Palm Beach, and Bolles, Goodwin, Ryskamp & Ware, Miami, for plaintiff.

Cone, Wagner, Nugent, Johnson, McKeown & Dell, West Palm Beach, and DiFalco, Field, Florea & O'Rourke, New York City, for defendant.

JAMES R. KNOTT, Circuit Judge.

*Final judgment:* Plaintiff, Albert C. Bostwick, Jr. ("Albert") brought this suit for divorce in May 1966 in the Dade County circuit court. The case was transferred to this court where defendant, Mollie Netcher Bostwick ("Mollie") filed a counterclaim for the same relief. The court has heard the testimony and received the evidence offered by the parties during hearings over an extended period of time. The litigation has been acrimonious, bitterly contested, and so protracted that new charges of misconduct have arisen since suit was filed. Successive waves of lawyers from Miami, West Palm Beach and New York have counselled and represented the parties, and their fees, noted below, have resulted in several independent lawsuits. The gathering of evidence, often from reluctant witnesses, the employment of investigators, the taking of several interlocutory appeals and changes of counsel engulfed the case with delays to the extent that it became necessary for the court to set the cause for final hearing on its own motion, a departure from the usual practice.

The parties were married in 1960 and lived together until their separation in March 1966. No children were born of their marriage. They were not models of conservative behavior, prudence and thrift in the sense of Benjamin Franklin's maxims. Each of them charges the other with extreme cruelty and adultery; each deprecates and derides the other's proofs and sturdily explains and defends, or denies, the acts alleged by the other.

The record is like a kaleidoscope with shifting scenes of covert surveillance and sleuthing, alleged connivance and entrapment,

sudden surprises at odd hours and strange places, and dramatic confrontations. The evidence includes identifying people in beds, on couches, in automobiles and in the grass. Much testimony revolved around whether a particular dinner party took place on the night of an occurrence which became known as "the raid" when certain photographs were taken. Mollie's counsel contends that she "explained quite logically how the situation arose" regarding the photographs; Albert's counsel strongly suggests that Mollie's explanation is "farfetched."

Further, Albert reproves Mollie for her "cruel, cynical attitude" toward his sporadic career in the law enforcement field and his lack of education. Albert, now 30 years old, was last employed in 1966, when he worked as investigator for the Florida Racing Commission at a salary of $1 a year. He explained that he had "a certificate of high school equivalent," and that his family interests lay in sports rather than education.

Albert paid $100,000 to Mollie's former husband, Edward A. Bragno, to obtain her divorce. Mollie attacks the credibility of Albert's testimony that this was intended, somewhat ungallantly, as a "loan" to Mollie. She also questions the testimony of one Wanda Halsey that she, Wanda Halsey, "had no idea where the $40,000 came from which Mr. Bostwick periodically had deposited in her checking account . . . but just went ahead and spent it." Albert stated that while married to Mollie he gave money to Mrs. Halsey anonymously, because if she knew the source, "it might embarrass her."

Each of the parties bemoans the meanness of his financial lot and points accusingly to the wealth and profligacy of the other. The testimony indicated that during the years they were together they spent in excess of $250,000 annually. Mollie contends that Albert's financial statement "shows that he has gone through $1,500,000 during the years 1966-1969, and yet he now has the audacity to claim he is totally destitute."

It may be observed, in passing, that neither party has invoked the doctrine of comparative rectitude. Evaluating the evidence objectively, it is somewhat difficult to fix clear "preponderance of blame" for the failure of the marriage, i.e., to apportion the degree of responsibility which each party should bear. Nevertheless, it is plain that the parties have failed to meet the standard of "domestication" necessary for a successful marriage and that their union should be dissolved, as hereinafter provided, in accordance with the principles expressed by the Supreme Court of Florida in the

case of Spencer v. Spencer, 193 So.2d 40. See, also, Stewart v. Stewart, Fla., 29 So.2d 247; Chestnut v. Chestnut, Fla., 33 So. 2d 730.

The record shows that Albert's income from trusts is about $80,000 per year, usually supplemented by capital gains which on occasion have caused the annual total to exceed $400,000. Mollie's annual income is about $40,000, derived from trusts. She claims attorneys' fees and costs payable by Albert.

Albert has paid or incurred attorneys' fees and costs in the total amount of $192,530, not including $46,000 costs paid for the services of one Frank Short, a private detective and bodyguard. He has so far paid $45,000 toward defendant's fees and costs pursuant to order of court. The court finds the following additional fees and costs incurred by the defendant to be properly chargeable to the plaintiff, in light of their respective financial circumstances — Fowler, White, Collins, Gillen, Humkey & Trenam, $37,500; Di-Falco, Field, Florea & O'Rourke, $30,500; O'Connell & Cooper, $9,275; Burdick & Silvian, $54,750; Cone, Wagner, Nugent, Johnson, McKeown & Dell, $1,450. It may be observed that costs, as distinguished from fees, constitute approximately $40,000 of defendant's expenses. The record shows that several thousand hours of time were expended by counsel for each of the parties.

The parties have homes in Palm Beach and Saratoga Springs, New York, more particularly described below, which at the outset of this litigation were jointly owned. They have reciprocal special equities in these respective properties, plaintiff in the Saratoga Springs property and defendant in the Palm Beach property, and defendant has been determined in this suit to be entitled to ownership of the Palm Beach property subject to the payment of certain obligations to plaintiff. Their respective equities in these properties are approximately equal, considering the mortgage on the Palm Beach property, taxes advanced, maintenance expenses on both properties, fire insurance proceeds from the Saratoga Springs property devoted in part to the Palm Beach property, and other factors. The court has determined that plaintiff should be declared to be the owner of the Saratoga Springs property, free of any interest in or claim by defendant. Similarly, defendant should own the Palm Beach property free of any interest or claim in behalf of plaintiff.

During the marriage, plaintiff purchased two Oriental cabinets for $5,800 and a certain chandelier for $3,255.53. The special master whose findings have heretofore been confirmed by the court awarded these items to plaintiff. One cabinet and the chandelier

were in defendant's possession and were sold by her. She is therefore responsible to plaintiff for the value thereof, hereby fixed at $6,155.53.

Upon consideration, it is hereby ordered and adjudged as follows —

(1) Defendant-counterclaimant is granted a divorce a vinculo matrimonii from the plaintiff-counterdefendant, and the bonds of matrimony which have existed between the parties are forever dissolved.

(2) Plaintiff is declared owner of the said property in Saratoga Springs, New York, more particularly described as follows — [legal description omitted]

Defendant shall within 15 days from date hereof convey or quitclaim to the plaintiff all her right, title and interest in and to said Saratoga Springs property; in default whereof, this judgment shall operate as such conveyance, effective 15 days from date hereof.

(3) Defendant is declared owner of the said property in Palm Beach, Florida, more particularly described as follows —

Lot A, Plat of New Siears Tract, as recorded in Plat Book 16, Page 86, Palm Beach County Public Records.

Plaintiff shall within 15 days from date hereof similarly convey or quitclaim to defendant all his right, title and interest in and to said Palm Beach property; in default whereof, this judgment shall operate as such conveyance, effective 15 days from date hereof.

(4) Defendant is indebted to plaintiff in the sum of $6,155.53, for the personal property belonging to the plaintiff and sold by her as aforesaid.

(5) The first supplement to final report of the special master dated January 14, 1970, is confirmed, and plaintiff shall have no further responsibility under the court's order dated July 26, 1968.

(6) Plaintiff's claims for contributions from the defendant toward the parties' tax liabilities and fees incident thereto are disallowed.

(7) Defendant's claim for alimony is disallowed.

(8) Plaintiff shall within a reasonable time pay to — Fowler, White, Collins, Gillen, Humkey & Trenam, $37,500; DiFalco, Field, Florea & O'Rourke, $30,500; O'Connell & Cooper, $9,275; Burdick & Silvian, $54,750; Cone, Wagner, Nugent, Johnson, McKeown & Dell, $1,450. Defendant's claim for further and additional counsel fees and costs totalling $65,960 is disallowed.