CARROLL, Judge.
On this appeal by the defendant below from a divorce judgment, the husband seeks reversal of the allowance of permanent alimony to the plaintiff wife, upon the contention that the trial court was in error in holding the evidence was insufficient to establish that the wife had been guilty of adultery.[1]
*530 Following separation of the parties, the divorce action was commenced by the wife on December 17, 1969, charging extreme cruelty and habitual indulgence in violent and ungovernable temper. There was one child of the marriage, a son then twelve years of age. The wife sought divorce, custody of the child, alimony, child support and attorney fees. The husband answered, and counterclaimed for divorce on the ground of extreme cruelty and for custody. On March 30, 1970, the wife answered the counterclaim.
On July 24, 1970, with leave of court, the husband’s counterclaim was amended to include a charge of adultery against the wife, to which the wife filed an answer of denial. In November of 1970 certain depositions were taken. Later a special master was appointed to take testimony and report on the issue of adultery. The master filed a report on April 27, 1971, finding in favor of the wife on that issue. Thereafter the cause was tried before the court on the other issues.
The judgment, entered on June 2, 1971, granted the wife a divorce, overruled the husband’s exceptions to the master’s report and adopted the report, dismissed the husband’s counterclaim, awarded custody of the child to the plaintiff wife, and allowed the wife $25 a week child support and $25 a week permanent alimony, and attorney fees in a certain amount, and also made provision for the wife to continue to reside with the child in the jointly owned residence of the parties.
We find merit in the appeal. The challenged ruling of the trial court on the issue of adultery was against the manifest weight of the evidence, and contrary to the legal effect of the evidence. In McMillan v. McMillan, 120 Fla. 209, 162 So. 524, 525, the Supreme Court of Florida said:
“To prove adultery the law does not require that specific acts be attested by eyewitnesses. The rule approved by the weight of authority is that if the circumstances proven are such as to lead the guarded discretion of a reasonable and just man to the guilt of the participants that is sufficient. Heath v. Heath, 103 Fla. 1071, 138 So. 796, 82 A.L.R. 537; Thayer v. Thayer, 101 Mass. 111, 100 Am.Dec. 110. In Atha v. Atha, 94 N.J.Eq. 692, 121 A. 301, it was held that if desire and opportunity were proven adultery would be presumed. * * * ”
Also, in Patterson v. Patterson, Fla.App. 1965, 177 So.2d 254, 255, it was said: “Where the facts in evidence reveal circumstances sufficient to lead a guarded discretion of a reasonable man to the conclusion that adultery was committed, then the charge has been proven.”
Because adultery usually takes place in secret or seclusion, proof thereof in most instances is by circumstantial evidence, through showing desire, by evidence of mutual affection or otherwise, coupled with opportunity under conditions or circumstances from which a reasonable judge of human nature would be led to conclude that adultery was committed. Here the evidence on those features was fulsome.
There was testimony by a private investigator, employed by the husband, that during a seventeen day period in July of 1970 which his investigation covered the alleged paramour, Ray Storwick, was in the plaintiff’s home almost daily, from early evening until one or two hours after midnight, and that on occasions during that time when he drove her to a grocery, a restaurant, and to a movie the plaintiff regularly had her arm around Storwick.[2] The repeated presence *531 of Storwick in the plaintiff’s home as so testified was not denied by plaintiff, although she denied that he remained there on any such occasions later than around 1:00 A.M. Plaintiff testified that her twelve year old son sat up with them while Stor-wick was there. In explanation of how or why the boy did not retire earlier, the plaintiff stated he made a practice of sleeping until around 1:00 P.M. It was brought out in the evidence that part of the time the son was absent over night, staying with the plaintiff’s sister.
In addition to that circumstantial evidence, in this case there were filed in evidence certain admissions against interest, made by the plaintiff on numerous dates by written entries in a calendar date book. Certain of those diary entries constituted confessions of adultery. Taken together the diary entries appear to be conclusive in that respect. The plaintiff admitted having written them, and she sought to avoid the effect thereof by claiming that in writing such entries she was “fantasizing.” When asked what she had meant by an entry stating she was “laid”, the plaintiff said she did not know. In face of those written admissions, the testimony of the plaintiff in her deposition that she had had no romantic attachment with Stor-wick, and denial of adultery, were ineffective.
Inapplicable here is the theory by which testimony such as that given by the private investigator in this case should be regarded as low quality evidence and of questionable credibility when it is contradicted by competent credible evidence, or when not corroborated by other evidence. See 24 Am. Jur.2d, Divorce and Separation, § 390. In this case the material facts presented through the testimony of the investigator were not so contradicted, and his testimony was not without corroboration. Denials offered by the plaintiff thereto were only as to minor features thereof. As noted, she denied that the paramour stayed as late as the investigator said, and denied she had put her arm around Storwick when riding with him to the places referred to by the investigator. With regard to the latter denial, it is to be noted that notwithstanding her professions of love of Storwick, in her written admissions, the plaintiff testified she had never kissed Storwick, or put her arm around him, or even held hands with him.
The admissions of adultery as revealed in the diary entries made by the plaintiff have corroboration in the evidence of the repeated presence of the paramour in her home for entire evenings and into the early morning hours. Cf. Hall v. Hall, 93 Fla. 709, 112 So. 622, 624-625. Likewise, the latter circumstantial evidence from which adultery reasonably could be inferred is corroborated by the admissions which the diary entries constituted.
“The weight to be given to admissions or confessions of adultery on the part of the defending spouse, when properly received in evidence, varies according to the circumstances of each particular case. When connected with other facts, they may in some cases be entitled to the highest consideration. Where they are full, confidential, reluctant, free from *532 suspicion and collusion, and corroborated by circumstances, they may rank with the safest proofs.” 24 Am.Jur.2d, Divorce and Separation, § 390, p. 519.
Notwithstanding a presumption of correctness which is to be accorded to the judgment, and that an appellate court should not substitute its judgment for that of the trial court on a matter which was based on findings of the trier of the facts, we must observe the principle that it is proper and is the duty of an appellate court to reverse such a judgment when it is determined that the finding or conclusion upon which it was made is clearly wrong through being contrary to the manifest weight of the evidence, or contrary to the legal effect of the law applicable thereto. Patterson v. Patterson, supra, Fla.App.1965, 177 So.2d 254; Benson v. Benson, Fla.App.1958, 102 So.2d 748.
The effect of the evidence in this case which was clearly sufficient to establish adultery was not overcome by the protestation of the plaintiff wife that her relationship with the alleged paramour had not included adultery. That blanket denial was insufficient in face of the presented evidence of adultery. McMillan v. McMillan, supra (162 So. at 526); Benson v. Benson, supra (102 So.2d at 751); Patterson v. Patterson, supra (177 So.2d at 255, footnote 2); Heath v. Heath, 102 Fla. 1071, 138 So. 796, 797.
For the reasons assigned, the award of alimony was improper in this case. Malby v. Malby, 142 Fla. 656, 195 So. 601; Patterson v. Patterson, supra. Accordingly, that part of the judgment which provided for payment of alimony by the defendant husband to the plaintiff wife is reversed.

. This divorce action was filed and decided in the trial court prior to the effective date of the no fault divorce law, Chapter 71-241. Applicable in this case is the provision of § 61.08 Fla.Stat., F.S.A., that “no alimony shall be granted to an adulterous wife.”

. That testimony as to the dates and times of Storwick’s arrivals and departures showed:
June 30, 1970, arrived 6:30 P.M. and departed 2:30 A.M.; July 3, arrived 6:05 P.M., later drove plaintiff and her son to grocery store; son entered store and they waited in the automobile, the plaintiff having her arm around Storwick’s shoulders ; returned to the plaintiff’s home *531 where Storwick remained until 2:08 A.M.; July 4, arrived 3:27 P.M., drove with plaintiff to a movie, plaintiff having her arm around Storwick; later returned to plaintiff’s home where Storwick remained until 1:47 A.M.; July 5, plaintiff’s husband came to residence and departed with son; fifteen minutes later Storwick arrived and remained two hours; returned 8:10 P.M. and remained until 2:05 A.M.; July 6, arrived 8:25 A.M.; drove plaintiff to a store at 3:20 P.M., with plaintiff having her arm around Storwick on way to and from store; Storwick remained at residence until 11:00 P.M.; July 7, arrived 5:30 P.M. and departed 2:23 A.M.; July 8, arrived 5:00 P.M.; went with plaintiff to restaurant at 11:15 P.M., returned to residence at 12:20 A.M. and remained until 2:25 A.M.; July 13, arrived 5:00 P.M., departed 2:00 A.M.; July 14, arrived 5:00 P.M. and departed 2:00 A.M.; July 16, arrived at a time not noted, and departed from residence at 2:30 A.M.