JOE E. HERRIFORD, Respondent, v. MARY FRANCES HERRIFORD, Appellant.

Kansas City Court of Appeals, April 7, 1913.

1. **DIVORCE: Indignities.** Certain acts and course of conduct set out in the opinion constitute indignities for which a divorce should be granted, unless they have been condoned.

2. ————: ————: **Condonation.** Condonation is forgiveness on condition that the offense be not repeated. If this condition be not kept the right of the injured party to urge the condoned indignities as grounds for divorce is restored.

3. ————: ————: **Connivance.** Connivance is the complainant's consent, express or implied, to the misconduct alleged as a ground for divorce. A corrupt intent in the mind of one party that the other should commit the offense is an essential element of connivance.

4. ————: ————: ————. One who suspects a spouse of wrongdoing may take reasonable steps to ascertain whether the suspect is or is not guilty without laying himself open to the charge of connivance, provided he does nothing to encourage the other to commit the offense, and does not directly or indirectly throw opportunities therefor in the way, but merely watches and suffers the other to make use of an opportunity already arranged for without help from him.

169 Mo. App.—41

5. ————: ————: ————. If plaintiff hired another woman to lure his wife to another man's bedroom in order to entrap and catch her there, he is not entitled to a divorce. If, however, upon suspecting his wife of being about to visit the other man's room, the husband merely hid himself for the purpose of spying on her and satisfying himself as to such suspicions and obtaining evidence in his favor, and did nothing to cause or bring about such meeting or to show that in his mind he consented to it, then he cannot be said to be guilty of connivance.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich*, Judge.

AFFIRMED.

*Chas. H. Calloway* and *Walter W. Calvin* for appellant.

(1) Plaintiff, respondent, should have been denied a decree because the testimony disclosed that he was guilty of misconduct in that he connived at and procured the acts to be done and committed for and upon which he predicated his right to a divorce; and this cause should, therefore, be by this court reversed with directions that plaintiff, respondent's bill be dismissed. 14 Cyc. 644; Nagel v. Nagel, 12 Mo. 53; Golding v. Golding, 6 Mo. App. 602; Morrison v. Morrison, 62 Mo. App. 299; Torlotting v. Torlotting, 82 Mo. App. 192; Vietrel v. Vietrel, 86 Mo. App. 494; Torlotting v. Torlotting, 97 Mo. App. 183; Vietrel v. Vietrel, 99 Mo. App. 710; Libbe v. Libbe, 157 Mo. App. 701; Bailey v. Bailey, 17 Cent. Dig. 162; Morrison v. Morrison, 136 Mass. 310; Wilson v. Wilson, 154 Mass. 194, 12 L. R. A. 524; People v. Chapman, 62 Mich. 280; Dennis v. Dennis, 68 Conn. 186, 34 L. R. A. 449. (2) The finding of the trial court upon the issues involved in this action is not binding or conclusive upon this court, and this court will examine the evidence for itself and reach its own conclusions therein. 14 Cyc. 734; 44 Iowa, 192; Rhodes v. Rhodes, 95 Mo. App. 327; Schu-

man v. Schuman, 93 Mo. App. 99; McCann v. McCann, 91 Mo. App. 1; Endesley v. Endesley, 89 Mo. App. 596; Jennings v. Jennings, 85 Mo. App. 290; Strahorn v. Strahorn, 82 Mo. App. 580; Groves v. Groves, 79 Mo. App. 142; Lawlor v. Lawlor, 73 Mo. App. 637; Torlotting v. Torlotting, 82 Mo. App. 192; Libbe v. Libbe, 157 Mo. App. 706.

*L. A. Knox, W. C. Hueston* and *Lewis A. Chapman* for respondent.

(1) The vile and foul names applied to respondent by appellant, in the presence of respondent's children, and in the presence of strangers, accompanied with assaults and attempted assaults, together with the contemptuous treatment of respondent by appellant, were sufficient indignities to render respondent's condition intolerable and upon which to predicate a decree of divorce in his favor; such indignities being such as are recognized by the statutes. Ryan v. Ryan, 137 S. W. 1014; Motley v. Motley, 93 Mo. App. 473; Goodman v. Goodman, 80 Mo. App. 274; Lynch v. Lynch, 87 Mo. App. 32; Blair v. Blair, 131 Mo. 571. (2) The finding and judgment of the court was neither against the law nor the evidence. Where the defendant in a divorce proceeding, by her conduct, has furnished cause which the statute declares to be sufficient to entitle plaintiff to a divorce, he has a right granted by law to a decree where he is not in fault. Hamberg v. Hamberg, 147 Mo. App. 591; Miles v. Miles, 137 Mo. App. 38; Wares v. Wares, 122 Mo. App. 129; Wald v. Wald, 119 Mo. App. 341. (3) A finding of a court in a divorce action on conflicting evidence of witnesses in open court will not be disturbed on appeal. Myer v. Myer, 158 Mo. App. 300; Stevenson v. Stevenson, 29 Mo. 95. Where testimony was oral and is conflicting, on account of the superior advantage possessed by the trial judge for weighing the testimony and judging of its credibility,

an appellate court will give much deference to his conclusions of fact. Torlotting v. Torlotting, 82 Mo. App. 192; Clark v. Clark, 48 Mo. App. 157.

TRIMBLE, J.—Suit by a husband for divorce. The parties are members of the negro "four hundred" of Kansas City, and occupy places of prominence among the people of that color throughout the State.

Divorce is sought upon the ground of indignities. The wife in a cross-bill prayed a divorce on the same grounds. The trial court heard the evidence on both sides and awarded plaintiff the divorce and dismissed defendant's cross-bill. Defendant appeals, praying this court to reverse the judgment of the trial court and dismiss plaintiff's petition.

Appellant's position apparently is, not that the evidence shows she should have the divorce, but that plaintiff connived at the acts of which he complains and is therefore not entitled to a decree in his favor. In fact, there is nothing in the evidence on which a divorce could be granted appellant as there were no indiginities to her proved unless, indeed, the alleged connivance be established, in which case the husband, by reason of the peculiar facts herein, would be guilty of a most atrocious indignity. So that, the only question here is, was there connivance on the husband's part?

To properly understand this question the charges in the petition should be kept in mind. They were: That although defendant, at the time of her marriage, knew plaintiff was a widower with four small children, and although after said marriage said children were obedient and respectful to her and performed their home duties cheerfully and well, still defendant had a strong aversion to them, punished them unnecessarily, neglected them in needful matters, told plaintiff the children would not be allowed to share in his affections, and finally compelled plaintiff to send them,

one after another, away from home in order to secure
domestic peace and quiet; that, owing to defendant's
ungovernable temper and its outbursts wholly unpro-
voked by plaintiff, she has made his home a place of
constant turmoil and confusion; that defendant has
assaulted and attacked plaintiff, cursing and abusing
him and calling him and his children vile names; that
at one time she attempted to stab him with scissors and
on another occasion drew a revolver on him and threat-
ened his life; that by reason of defendant's conduct,
when away from home and in the presence of strangers,
she was made the subject of gossip among friends and
acquaintances of plaintiff throughout the State,
causing him great humiliation and mortification; that
she corresponded with, paid attention to, visited and
entertained a certain man named Jones; that she was
caught by the husband in Jones' rooms under circum-
stances which, while they did not show adultery on
that particular occasion, yet they were such as to con-
stitute such visit and conduct an indignity; that by
reason of all which acts and course of conduct on the
part of defendant, plaintiff's peace of mind and do-
mestic comfort has been wholly destroyed, his capacity
for discharging his professional, social and parental
duties have been greatly impaired and his condition
rendered intolerable.

The testimony is very voluminous, consisting of
over 876 pages of closely printed evidence, which we
have carefully gone over in order to see for ourselves
whether or not justice has been administered between
these colored litigants.

It is unnecessary to set forth even a resume of
this evidence. Suffice it to say, that in our opinion
all the indignities charged, with the exception of those
charging improper conduct with stangers and with the
man Jones, were established and fully corroborated
by disinterested witnesses in addition to plaintiff's
own testimony.

Defendant's contention is that those indignities thus established, if they were indignities, occurred years ago and were condoned by plaintiff; that in reality they were mere trivial matters exaggerated for the purpose of securing a divorce; that plaintiff had before this filed two other suits for divorce but had abandoned them because he did not have sufficient grounds on which to prevail, and that finally the charge of unseemly conduct was made in order to secure sufficient grounds and that plaintiff cannot get a divorce on this ground because he connived at it.

The case was tried on a third amended petition filed by plaintiff, and, while the other petitions are not preserved in the record, we assume that the charge of unseemly conduct with strangers and the catching of defendant in Jones' room were not included in the grounds of divorce until the third amended petition was filed.

The matters hereinbefore enumerated, as having been established by corroborative testimony, constitute indignities sufficient to entitle complainant to a divorce. [Rose v. Rose, 129 Mo. 175.] As to whether a condonation will deprive them of vitality or not depends on the conduct of the offending party after the condonation. Condonation is forgiveness on condition that the offense be not repeated. If this condition is not kept, the right of the injured party to urge the condoned indignities as grounds for divorce is restored. [Viertel v. Viertel, 123 Mo. App. 63.]

Defendant's theory is that, by dismissing the two former suits, and by abandoning the first two petitions in this suit, plaintiff admits that his grounds therein stated were insufficient and the charges baseless; but the evidence shows that these former suits were dismissed upon solicitation of defendant and on her admission that she was in the wrong and her promise to do better in the future. There is nothing to show why the third amended petition was filed, and, in the ab-

sence of such showing, we assume it was to include the visit to Jones' rooms as an additional indignity, as it occurred after the filing of the original petition.

The last and final separation and the institution of the present suit took place before the commission of the alleged acts of connivance charged against plaintiff, and hence it might not be unwarrantable to say that if the testimony is found sufficient to establish these other less immoral indignities, not connected with Jones, we perhaps could affirm the judgment of the trial court for that reason. But inasmuch as plaintiff's connivance, if proved, would greatly weaken his charge of these other and lesser indignities and would show that he himself placed no reliance in them as grounds for a divorce, and would furthermore show that, instead of being innocent and injured, he was in fact the offending party, we prefer to examine and decide the case on the question whether or not there was connivance on the part of plaintiff.

The facts involving the charge of connivance are these: Defendant, in company with another married woman, went to the Union Station to meet Jones and another man who were railway mail clerks living in St. Louis but whose runs brought them to Kansas City every other night at stated periods. Not meeting the men there the women went to the men's rooms in another part of the city. The plaintiff was in an office up stairs across the street from these rooms watching for the women to come, and after they went to the rooms he called a policeman and with him entered the rooms. The policeman arrested the four, the two men and the two women, and took them to the police station in the parol wagon where they were examined and then discharged because no actual wrongdoing had been shown.

It is defendant's contention that she had never corresponded or had anything to do with Jones before this time; that she was induced to go to see him at the

railway station by the urging of her companion, the other woman, whom she supposed was her friend; that she went to see Jones to secure him as a witness in her favor in the divorce suit, because she understood her husband was going to charge indiscreet conduct on her part on an occasion in St. Louis when Jones was present; that, not finding him at the station, her companion urged and induced her to go with this companion to Jones' rooms and that she did so with no thought of wrongdoing. It is her further contention that this woman companion was employed by plaintiff to induce defendant to go to see Jones and to visit his rooms in order that plaintiff might entrap her there and secure a sufficient ground for his divorce suit which, as stated before, was then pending.

If it is true that plaintiff did have this woman companion to lure her into a trap, then he is not entitled to a divorce. If, however, upon suspecting his wife of being about to visit Jones at his rooms, he hid himself for the purpose of spying on her and satisfying himself as to such suspicions and obtaining evidence in his favor, and *did nothing to cause or bring about such meeting or to show that in his mind he consented to it,* then he cannot be charged with connivance.

Connivance, in the law of divorce, is the complainant's consent, express or implied, to the misconduct alleged as a ground for divorce. A corrupt intent in the mind of one party that the other party should commit the offense is an essential element of connivance. [14 Cyc. 644.] In Dennis v. Dennis, 68 Conn. l. c. 194, it is said: ''Connivance is the corrupt consenting of a married party to that conduct of the other of which afterwards complaint is made. It bars the right of divorce because no injury is received; for what a person has consented to, he cannot set up as an injury. Connivance is a thing of the intent resting in the mind. It is the consenting. But the connivance

may be the passive permitting of the adultery or other misconduct, as well as the active procuring of its commission. If the mind consents, that is connivance. [Rose v. Rose, L. R. I. P. & D. 734; Pierce v. Pierce, 3 Pick. 299.]"

Now, holding that connivance may be a passive permitting of the misconduct, does not mean that the one who suspects a spouse of wrongdoing cannot take reasonable steps to ascertain whether the suspect is or is not guilty without himself being guilty of connivance. If he does nothing to encourage the other to commit the offense, and does not directly or indirectly throw opportunities therefor in the way but merely watches and suffers the other to make use of an opportunity already arranged for without any knowledge on his part, he is not guilty of connivance. [Wilson v. Wilson, 154 Mass. 194; Riersen v. Riersen, 52 N. Y. Sup. 509; Krager v. Krager, 24 N. Y. Sup. 219; Torlotting v. Torlotting, 82 Mo. App. l. c. 203.]

In Robbins v. Robbins, 140 Mass. 528, the husband went away from home one night in order that the wife, whom he suspected, might have an opportunity to commit adultery with a lodger, and then secretly returned about nine o'clock and caught his wife in bed with the lodger. That particular act of adultery would not have happened but for the scheme of the husband in pretending to go away. The court went so far as to hold that, as the trial court had found there was no corrupt intent on the part of the husband that his wife should commit adultery, he was not guilty of connivance. We apprehend that, if there are cases seeming to hold that mere passive permitting of the misconduct or failure to prevent the wrongful act constitutes connivance, it will be found that in reality the facts were such as to show, not simply a mere passiveness and failure to prevent, but a *consent* in the mind of the wronged party to the commission of the wrongful act.

With reference to the case now before us for consideration, we do not think the evidence is sufficient to justify us in finding the plaintiff guilty of consenting to the visit of his wife to Jones' rooms or that his wife's woman companion was his agent in getting her to go there. It is true this woman companion at one time made affidavit and gave a deposition in which she stated that she did induce defendant to go to Jones' rooms, and that she did so under directions and in behalf of plaintiff. But when she learned that she would be required to swear to it before the judge in open court, she broke down and confessed that the statements in the affidavit and deposition were absolutely untrue. At the time of making this affidavit and deposition she had a great interest to make them in order to shield herself from any imputation of wrongful conduct with Jones' roommate; and she says she made them thus in order to deceive and placate her own husband. By her course of conduct and contradictory swearing she has made herself a sorry spectacle in the case and but little dependence can be placed in her testimony either way.

The reason or excuse offered by defendant, however, for going to see Jones is flimsy and not convincing. She says she wanted to get him as a witness to the fact that there was nothing wrong about an occurrence at St. Louis a number of years before. But, as a matter of fact there was a number of women present at that occurrence, living in Kansas City and known to defendant, who could have testified as well as Jones. The charge which she understood her husband was going to make in the amended petition, and against which she intended to have Jones as a fortifying witness, was not that she had committed adultery with Jones but that she had drunk beer with him publicly at the Annheuser-Busch Brewery at St. Louis, in company with others. These others were the women above referred to as living in Kansas City and

they would have been as good witnesses for her as Jones.

There is also evidence tending to show that she had received letters from Jones months prior to the time of this visit to his rooms, and that these letters indicated that Jones and she were at least on terms of personal familiarity and in which appointments, both in the past and in the future, were referred to. This correspondence as well as rumors of defendant's attentions to Jones had come to the knowledge of plaintiff some months before, but after the filing of the original petition in this case. From some of these letters, which plaintiff intercepted, he had reason to suspect that Jones and his wife would meet upon the first occasion of his coming to Kansas City on his run. And plaintiff says that acting under these suspicions he ascertained from the wife of Jones' landlord when he would next be in Kansas City and by reason of this information, he lay in wait for them across the street to catch them; and that he did not learn the date of such visit from his wife's woman companion. We do not think the evidence shows that plaintiff consented to his wife's visit to Jones or that his wife's woman companion was his agent in getting her to do so. The charge that his companion, acting as plaintiff's agent, lured defendant to Jones' rooms rests primarily on this companion's affidavit and deposition, which was abandoned when she found her husand would not leave her upon learning the truth, and that she would have to swear to the agency before the judge in open court. We therefore do not hold the husband guilty of connivance.

In justice to defendant we perhaps may say that the evidence of what took place at the time plaintiff surprised his wife and the other three in Jones' rooms convinces us that no physical act of adultery was committed by her with Jones on that occasion, and the testimony that she had on other occasions

committed adultery with him rests alone on the un-corroborated testimony of her woman companion, whom we do not deem worthy of belief. In fact, we give little or no credence to this companion's story save where it is corroborated by the proved facts in the case and by other credible testimony. But the divorce is not sought on the ground of adultery but on the ground of indignities. Even if no adultery is committed by fleshly act, still a wife has no right to so conduct herself as to implant a torturing suspicion of infidelity in the husband's breast and lead him and the world to think adultery has been committed. Such conduct is of itself an indignity, and the evidence, aside from the testimony of this woman companion, shows that defendant was, at least, guilty of indigni-ties to her husband in her conduct with Jones which authorized him to file an amended petition and in-clude all the indignities of which he complains as grounds for divorce. The facts do not show that plaintiff consented to her conduct with reference to Jones or that he did anything to cause or bring about her visit to his rooms upon which the husband relies as only one of a series of indignities.

The evidence is sufficient to sustain the finding of the trial court and we agree with its decision in the case. Hence judgment affirmed. All concur.