**Arthur LeBEAU, (Plaintiff) Respondent,**

v.

**Anna LeBEAU, (Defendant) Appellant.**

**No. 31362.**

St. Louis Court of Appeals.

Missouri.

April 16, 1963.

**516**

Milford T. English, Cook, Murphy, Lance & English, St. Louis, for appellant.

Charles M. Shaw, Leonard Bornschein, Clayton, for respondent.

JACK P. PRITCHARD, Special Judge.

Defendant appeals from a decree of the trial court dated April 17, 1962, denying her a divorce (and consequently alimony) on her cross-bill which was filed on September 25, 1961. This case was taken as submitted on appellant's brief and oral argument had on March 5, 1962. No appeal was taken by plaintiff from said decree, which also denied him relief on his petition for divorce.

In her cross-bill, defendant alleged that she and plaintiff were married April 22, 1931, and that they lived together as husband and wife until April 25, 1954, and "that during all of said time defendant faithfully demeaned herself and discharged all of her duties as the wife of said plaintiff, and at all times treated plaintiff with kindness, consideration, love and affection. That the plaintiff herein, wholly disregarding his duties as the husband of defendant, has so conducted himself and has offered to defendant such indignites as to render her condition in life as his wife intolerable in

the following among other respects, to-wit: (A) That the plaintiff has deserted this defendant and has not fully provided for her support since that time. (B) That the plaintiff has lost interest in his home, and particularly this defendant, and is constantly seen in the companionship of another woman; in fact, has been living with another woman on and off since said April 25, 1954. (C) That the plaintiff attempted to obtain a divorce once before from this defendant, being Cause No. 210,768, Division No. 2 of the St. Louis County Circuit Court, and said petition being ruled against him; that since that time the plaintiff has not lived with the defendant, has not cohabited with her, nor has he in any way resumed the relationship of husband to this defendant."

The cross-bill goes on to allege defendant's residency, her inability to support herself and plaintiff's means to do so, and the prayer is for a decree of divorce, support and alimony for defendant to properly sustain her for her lifetime. There were further allegations concerning support of two minor children born of the marriage, but it is undisputed that all of the children of the marriage are self-supporting and emancipated, and no point is made by appellant of that issue here.

Plaintiff admitted in his reply the marriage and separation of the parties, but denied other allegations of the cross-bill. He has not opposed defendant's contentions here by filing a brief in this court.

As alleged, the admissions and proof support the facts that these parties lived together after their marriage, April 22, 1931, until the plaintiff husband left the family home at 675 Lindsay Lane, Florissant, Missouri, on said April 25, 1954, and that six children were born of this marriage, all of whom were reared by the parties and stayed in this home until marriage or emancipation.

The grounds for divorce raised by appellant's brief are limited to the allegations of indignities as pleaded of plaintiff husband leaving the home and living on and off

since the date of separation with another woman.

Plaintiff husband made the following admissions during the course of his testimony: He knows a person by the name of Iola Guymon, whose present address is the same as his, 675 Lindsay Lane, Florissant, Missouri, which is the family home. He met Iola Guymon about five and a half years ago—she is a good friend; he also described her as his girl friend. On September 21, 1954, he gave Iola Guymon a check for $100 made to and endorsed by her. He has lived with Mrs. (Miss?) Guymon in the family home for roughly five months, and she has furnished part of the house with a livingroom suite, a kitchen set, a second-hand dining room set, a deep freeze, a lawn mower, and probably several other items, some of these furnishings being in the house for more than five months—no part of it over a year. He and Iola now live in the same house, but he denied marital relations while he has been living there with her.

Plaintiff said he might have gone out with Iola in 1955, and Defendant's Exhibit 3 corroborates this, being a photograph of Iola and plaintiff which he said was taken at a carnival in Salem, Illinois, in 1955 or 1956.

Plaintiff further said he was a faithful husband until he met Iola five or six years ago; he would like to marry her now if it becomes possible. He stated he never associated with Iola until after the separation from Mrs. LeBeau.

Anna C. LeBeau, defendant, testified that plaintiff is living in the home on Lindsay Lane with Iola Guymon, and has been doing so within a year off and on. Plaintiff never complained while they were together; only after he met this woman much of this took place. She said it was unbearable to live with plaintiff many times. From the time of the marriage until the husband left in 1954, she did the best she could to act as a good wife to him, cooking for him, taking care of the children, and keeping the home clean and liveable. At the time plaintiff left

the home he had this woman—defendant asked him, "Did you kiss her?" and he said, "Yes." "He told me he kissed this other woman."

Defendant also proved, and plaintiff admitted, that he had previously sought a decree of divorce on substantially the same allegations here pleaded by him in his petition, and upon substantially the same facts adduced by him, and such decree was also denied him by the Honorable Michael J. Carroll, Judge of Division 2 of the St. Louis County Circuit Court in Case No. 210,768 therein, on May 26, 1958.

Defendant's good reputation for honesty, morality, and general good conduct was testified to by witness William B. Madden, and also by Helen Surkamp and Stella M. Sawyer, who testified that she had known defendant all her life, that defendant's home was spotlessly clean when she was there, and she couldn't see anything wrong with the clothing or upbringing of the children, except she thought when the children got older they wanted to assert themselves, but she thought that defendant did her part—at least, she set an example in the house.

Plaintiff offered no rebuttal to defendant's case, and in his case in chief he testified (here set forth only insofar as such testimony might bear upon the issue of the defendant being the "innocent and injured" party) that the reason he left the home after 23 years was that he lived a lonesome life, that defendant never showed him any love, even from the first day of the marriage, although she never did deny him sexual relations; she accused him of being drunk and nagged at him; she never cooked pork chops the way he liked them by dipping them in egg and bread crumbs; that the defendant never had any pride in herself in her personal appearance; and there was some testimony to the effect that there was bickering between them over the control and discipline of the children.

■ In divorce cases, as in equitable matters, the appellate court, although deferring to the trial court's findings on controverted matters, is not bound by the decree below, but must review the entire record and reach its own independent conclusions on the whole of the evidence. Ramos v. Ramos, Mo.App., 232 S.W.2d 188; Watts v. Watts, Mo.App., 325 S.W.2d 40.

■ We adopt defendant's view to the effect that she does not have to be lily-white to possess the status of being the innocent and injured party in this suit, and the complaints made by the husband above alluded to, are in this court's opinion insufficient to destroy that status of defendant. Simon v. Simon, Mo.App., 248 S.W.2d 560, 563, where it was said, "An 'innocent' party is not required to conclusively prove freedom from all fault, or such exemplary conduct as excludes any misconduct or all unwise or uncalled-for acts. He or she need show only that, under all the circumstances of a particular case, he or she has not been guilty of conduct constituting a ground or grounds for divorce under RSMo. 452.010."

Significant it is here that plaintiff has *twice* failed under similar allegations pleaded by him and facts adduced to establish that there were indignities rendered unto him by defendant as would entitle him to a decree of divorce. We therefore hold that defendant wife is indeed the innocent and injured party in this case.

■ As to the defendant wife's allegation of indignities, here the evidence is undisputed that plaintiff husband left the family home and the wife and thereafter associated with and lived with another woman for at least five months, and never did after the separation resume any matrimonial relations with defendant. Such conduct, continuing and clearly established by defendant in this record, and undenied by plaintiff, entitles this wife to a decree of divorce as a matter of right.

In Herriford v. Herriford, 169 Mo.App. 641, 155 S.W. 855, 858, the court said: "* * * But the divorce is not sought on the ground of adultery, but on the ground

of indignities. Even if no adultery is committed by fleshly act, still a wife has no right to so conduct herself as to implant a torturing suspicion of infidelity in the husband's breast and lead him and the world to think adultery has been committed. Such conduct is of itself an indignity * * *." See, also, Ferguson v. Ferguson, Mo.App., 279 S.W. 189, 192.

■ As was stated in Hess v. Hess, Mo. App., 183 S.W.2d 560, 565, "Upon a sufficient petition and proof to support it 'divorce is a legal right, the granting or withholding of which is in no way dependent upon the discretion of the trial court * * *'." It is apparent in the case at bar that the trial court had no authority to deny defendant's divorce, her cross-bill being sufficient and indisputable proof having been adduced in support of the allegations therein contained. Willis v. Willis, Mo. App., 274 S.W.2d 621, 628; Needham v. Needham, Mo.App., 299 S.W. 832, 834; Marolf v. Marolf, 191 Mo.App. 239, 177 S.W. 819(3); Miles v. Miles, 137 Mo.App. 38, 119 S.W. 456.

■ With respect to defendant's prayer for alimony, it appears that by reason of plaintiff's conduct, his ability to pay (he earns presently $2,950.00 per year as a painter), defendant's needs for her proper maintenance and her ability to care for herself, defendant would be entitled to a judgment for alimony in a reasonable amount. Section 452.070 RSMo 1959, V.A.M.S.; Fields v. Fields, Mo.App., 343 S.W.2d 168, 170. Defendant testified as to her needs as follows: Taxicab $20.00; Rent $60.00; Clothing $20.00; Food $90.00; Medical care $30.00; Medicine $10.00; and Miscellaneous $15.00, a total of $245.00 per month. She further testified that on the day following the day of trial that she would go on a job with Father McCarthy in Maplewood, where she would get her board and live on the premises. Thus, the items enumerated by her as to rent, food and taxicab (total $170.00) should be eliminated, leaving $75.00 for her other expenses. Therefore, this court finds that $75.00 per month alimony is reasonable for defendant's needs and is in accordance with plaintiff's ability to pay.

The court made an award of attorney's fees to the defendant, and as to this its judgment is affirmed. But for the reasons stated, the judgment of the trial court is reversed as to the defendant's cross-bill, and the cause is remanded with directions to enter a decree of divorce upon her cross-bill, and an award of alimony in the sum of $75.00 per month.

WOLFE, Acting P. J., and ANDERSON, J., concur.

RUDDY, P. J., not participating.