Donald W. MARKHAM, Plaintiff-Appellant,

v.

Audree E. MARKHAM, Defendant-Respondent.

No. 24911.

Kansas City Court of Appeals.

Missouri.

June 3, 1968.

Wayne R. Starr, David A. Sawyer, Independence, for appellant.

DeWitt & Zeldin, Quinn, Peebles & Hickman, Kansas City, for respondent.

MORGAN, Judge.

This is a contested divorce case which was tried on the husband's petition and the wife's cross-petition. After hearing the parties and their witnesses, the trial court entered a decree of divorce in favor of the wife. Custody of two minor children was placed with her during the school year with the husband to have reasonable rights of visitation at all times plus a more exclusive right during the summer vacations. The husband was further ordered to pay $50.00 per month per child for support and $25.00 per month as alimony. The child support payments were to abate during the summer months. The wife and mother was granted specific permission to remove the children from Missouri for an intended permanent residence in California. The husband and father has appealed, but he waives any objection to either the child support payments or alimony unless the findings of the trial court are reversed by finding him entitled to a divorce and general custody of the children.

The evidence discloses the parties were married July 10, 1960, in Martinez, California, and that they lived for approximately one and one-half years in a cottage owned by the wife's parents near Martinez. The cottage was located on a small tract adjacent to a five acre nursery owned and operated by her parents. It seems agreed that the parties were happy during this period, and the marital disharmony began after they moved to Kansas City in 1962. The resulting lack of happiness and the alleged causes thereof were presented to the trial court by the parties, and the eight witnesses called were equally divided in corroboration of the views of either. This may be seen from the conclusions set out in the briefs of both parties, and including a portion of each here will eliminate much of the necessity for detailing the testimony of all who testified. The husband asserts, "It is clear from the virtually undisputed testimony that the respondent (wife) is neither an innocent nor an injured party as a matter of law, that appellant (husband) is the innocent and injured party. * * * It is equally as clear from the testimony that the court erred in granting custody of the children to respondent, since such custody is detrimental to their best interest and welfare." The wife replies, "Nothing could be further from the truth. These witnesses established that respondent was a loving and caring mother who disciplined her children in an acceptable manner in the hopes they might grow up to be obedient and worthwhile children in spite of the poor environment in which their penurious father, the appellant, forced them to live."

The trial court by its decree confirmed the latter view of the evidence, and we approach the arguments of the husband that it was an incorrect finding. He first contends the wife was not shown to be either injured or innocent. She testified that he left the home intending not to return and declared that he was going to get a divorce. At this time he took the children and moved in with a brother and sister-in-law, and she could only see the children through a screen door. This fact was denied by the husband when he declared he was told to leave, but a neighbor had observed the mother being kept from the children. If for the moment we assume her innocence, the case of Smiley v. Smiley, Mo.App., 207 S.W.2d 862, is authority for holding that abandonment for any length of time constitutes an indignity. She further complained of the husband's penuriousness. It is undisputed that his yearly earnings were near $8,000.00, but that they lived in an admittedly run down house. This fact is not as disturbing as is that evidence showing no effort was made to replace as many as four broken windows and make other minor repairs. It was also shown that the wife had been provided six dresses during seven years of marriage.

After deciding to leave, he contributed about one dollar a day for her support. Recreation, if a necessity, seems to have been forgotten. Absent this trait, the other difficulties could easily have been avoided. This situation is unlike that we found in England v. England, 225 Mo.App. 725, 39 S.W.2d 429, wherein it was said: "The testimony shows the defendant is poor; but poverty, in itself, is not a sin, nor may it be held to amount to an indignity." However, non-support resulting from a refusal to support, when funds are available, could amount to mental cruelty and create an intolerable condition. We so held in Wright v. Wright, Mo.App., 239 S.W.2d 765, 766: "The testimony shows that defendant was penurious to the extent that it amounted to mental cruelty * * *." The wife further charges she was falsely accused of being "over-friendly" with other men. The term used is extremely vague but an effort was made to give it some derogatory connotation. For example, the husband testified his wife called his brother's home and first inquired where the brother was, what he was doing, and "then she would finally get around to asking my sister-in-law how she was." He testified the same thing had happened with the next door neighbors, and the wife there testified as to its falsity and threatened to sue the husband for such insinuations. The evidence offered to prove the allegation is too absurd to create a semblance of suspicion on our part the accusation could have been true, and, "Our courts of appeal repeatedly have held, and never to the contrary, that charges of infidelity without just cause are personal indignities." Tuttle v. Tuttle, Mo.App., 240 S.W. 509. The wife proved herself to have been an injured party under Section 452.010, V.A.M.S., and we look to see if she was also legally innocent. In doing this we need not find her to be "lily-white," LeBeau v. LeBeau, Mo.App., 366 S.W.2d 515, as, "an 'innocent' party is not required to conclusively prove freedom from all fault, or such exemplary conduct as excludes any misconduct or all unwise or uncalled-for acts. He or she need show only that, under all the circumstances of a particular case, he or she has not been guilty of conduct constituting a ground or grounds for divorce. * * *" Simon v. Simon, Mo., 248 S.W.2d 560, 563. One witness of the husband revealed no relationship to the parties and testified she had seen the wife slap the children five or six times. She obviously thought too hard. She said the wife had told her she wanted to return to California. Argument is made the sole reason was a desire of the wife to be near her parents and that the husband and children became unimportant to her. His mother testified she lived with the parties for a year and that the wife left the housework for her and that she was mean to the children. His sister-in-law had seen the wife whip the children. Her husband, the plaintiff's brother, testified as to the manner of correcting the children. He said, "Well, mostly their playing and noisy and she picks them up and beats them. She'd turn David over her knee and spank him hard. I mean it's not just a light spank, it's a hard spank. She doesn't know when to stop. I've seen her hit Patty in the back several times with her fist —her hand, I mean." To counteract this testimony the wife offered a next door neighbor. She said, "I have never seen her mistreat them." Another neighbor stated, "Well, she's a good mother and she makes them mind, but I have never seen anything out of the way." Another said, "She always kept her house pretty nice. * * * They were always clean. She took real good care of the kids." Much of the testimony was conflicting, but each allegation of the husband was contradicted by the evidence offered by the wife. Of necessity and properly we defer to the finding of the trial court that the wife established her innocence. We do, however, agree with the husband that harsh and abusive treatment of a child, if proven, is an indignity to the other spouse. Greco v. Greco, Mo.App., 356 S.W.2d 558.

The other contentions of the husband, that he should have been awarded

custody of the two children, and if not, that the wife should be required to care for them in Missouri, may be considered together. We must view this phase of the controversy in light of applicable established principles: (1) the welfare of the children is paramount and of prime consideration, and (2) the mother is generally the better suited parent for the care of children of tender years. The trial judge heard the witnesses and could personally, in that capacity, observe and evaluate the potential of either parent to properly provide the best care possible under the circumstances that now exist. Admittedly, the ideal situation is now unattainable—for as we said in Ballew v. Ballew, 288 S.W.2d 24, Sperry, C., "There is no doubt but that the children should all live in a united home, in harmony and security. But the parents, by their own marital failure, regardless of who was most at fault, have made it impossible for any of the three children to have that blessing * * *." The evidence shows that either party contemplated needing the assistance of relatives in providing such care. That available to the mother had been found helpful in the past, and from the evidence, we find nothing in the father's plans that requires or justifies our finding the decision of the trial judge to have been erroneous. In appreciation of the father's request the children not be taken to California, we have carefully reviewed those cases that have exhaustively considered the problem of placing such distance between parents. Mo.Dig., Divorce, ⬠300. In each, the welfare and hoped for happiness of the children has controlled. For instance, in Baer v. Baer, Mo.App., 51 S.W.2d 873, the request of a mother to take a child from St. Louis to the state of New York was denied. The court there found both parents to be competent and dedicated toward the interests of the child. It was found that the father was a leader in the business sector of the community and could give the child many advantages, and that nothing in New York could better contribute toward his health, pleasures, comforts and education. To the

contrary, in Oliver v. Oliver, Mo.App., 325 S.W.2d 33, the mother's plan to remove a child to Virginia was discussed with approval because a home there with her parents would provide "more desirable surroundings." The same advantage probably can be gained here in that a home is available in a semi-rural atmosphere associated with the maternal grandparents' ownership and operation of a nursery. From the record we must agree the trial court salvaged all possible from a broken home for the benefit of the children.

It is appropriate to say again, "We find that this case falls within the rule announced many times by our appellate courts that, in divorce suits, great deference should be paid to the finding of the trial court, who had the parties and witnesses before him and was in a much better position to judge of their credibility than is this court. We defer to the conclusions reached by the learned trial judge * * *." Wright v. Wright, supra.

The judgment is affirmed.

All concur.