Andra J. DURBIN (now Parker), Respondent,

v.

Darrell R. DURBIN, Appellant.

No. KCD 30013.

Missouri Court of Appeals, Kansas City District.

Oct. 30, 1978.

P. Wayne Kuhlman, Liberty, for appellant.

Thomas J. Cox, Jr. and Charles C. Curry, Kansas City, for respondent.

Before HIGGINS, Special Judge, Presiding, WELBORN, Special Judge, and PRITCHARD, J.

PRITCHARD, Judge.

This is an appeal from the trial court's denial of a motion to modify a decree of dissolution, which was entered July 23, 1975, as to child custody. The first point contends error in the court's failure to find respondent in contempt of court, upon appellant's motion therefor, upon the allegation that respondent demonstrated a willful course of dealings with him, calculated to interfere with his visitation rights. The second point is that the court erred in sustaining respondent's application to remove the child from the state of Missouri, because, as contended, there was no showing of substantial and continued change in circumstances requiring the move, which was not in the child's best interest. The third

point is that the court erred in allowing respondent to retain custody because appellant showed a substantial and continuing change of circumstances requiring the change: a. Respondent's interference with appellant's visitation rights; b. her failure to obtain health care treatment for the child, and interfering with the doctor's treatment; her living with another man prior to her marriage to him; her failure to accept child support payments from appellant; his excellent relationship with the child and his stable home situation, "all show that it would be in the best interest of the minor child that the custody be changed and warrant that change of custody"; c. that the court's decision was contrary to the overwhelming weight of the evidence as to the best interest of the child. The fourth and last point is that the court abused its discretion in failing to reopen the case for further testimony of respondent's brother as to her home life and treatment of the child while in Oregon, "which evidence was unavailable to the petitioner until twenty-eight days following the court's order."

■ The trial court did not err in refusing to find respondent in contempt. The evidence concerning the visitation of the child by appellant is conflicting, and the court had the right to believe respondent's version which was: Appellant exercised his visitation rights up until two weeks before respondent and her second husband moved to Oregon. After the dissolution she moved from Belton to Peculiar, Missouri, and gave him her post office box number and directions to her home. He, on the other hand, had never told her where he lived or what his telephone number was, preferring only that she contact him through his mother. He did not object when he was told that the child was being sent to Oregon to visit his maternal grandparents. It was her desire that appellant see more of the child, and once suggested that he keep the child for a week. Respondent arranged for appellant to visit the child during the week while he was with a baby-sitter, but appellant did so only for a short time. His mother testified that he had the child at least one week each month, and appellant's

present wife testified that he had him about once every three weeks. Appellant acknowledged that he generally had the child every other weekend, with some extra times. When the child returned from Oregon, appellant resumed visiting him. There were a couple of times when respondent asked that visitation be postponed, these being after the child's surgeries (for correction of a cleft palate), when he was on a special diet and was wearing arm restraints. Respondent twice told the court that she had tried to arrange for two month visitation each year, feeling that it would be better for the child, but appellant was not agreeable to that arrangement. These facts are woefully short of showing that respondent willfully violated the court's decree of visitation rights to appellant to justify imposing the harsh penalty of contempt of court.

■ The question remaining is whether respondent was guilty of contempt of court in removing the child to the state of Oregon, where she went with her second husband, admittedly without telling appellant and without securing the permission of the court. In *Dupree v. Dupree,* 357 S.W.2d 241 (Mo.App.1962), the mother moved the court for permission to remove the child to California, which was denied. The court said, page 243[4], "Ordinarily the court will not permit the removal of a child to another jurisdiction because of the difficulty of enforcing subsequent orders deemed necessary for a child's welfare, but where it clearly appears that such removal is for the best interests of the child, it is readily granted. (Citing cases.)" It was noted in *Middleton v. Tozer,* 259 S.W.2d 80 (Mo.App. 1953), that statements such as the Dupree quotation deal with the policy of the law where permission to remove a child is requested, and with the power of the court to authorize removal. It was held that there is nothing in the law to compel one who is given custody permanently to reside in this state; that the award of custody may result in the removal of the child beyond the limits of the state in any case; and, at page 87, "[W]here the decree remains silent as to

removal of the child from the jurisdiction of the court and does not specifically prohibit the child's removal; the parent to whom the child has been awarded may lawfully take it into another state. (Citing cases from other jurisdictions.)" See also 24 Am. Jur.2d, Divorce and Separation, § 797, p. 905; 27B C.J.S. Divorce § 313, p. 487. Point I is overruled.

As to Point II, raising the propriety of the court's order in these present proceedings permitting respondent to remove the child to Oregon, the facts are these: The child, a male, was born with a cleft lip and a bilateral cleft palate, and had been under the care of a plastic surgeon from shortly after his birth for the purpose of correcting the defect. As of the date of hearing, he had undergone plastic surgery four times. Respondent moved with her second husband to Seaside, Oregon, taking the child with her, not giving notice thereof to appellant. At the time of this hearing, respondent testified that the child was in good health. She had taken him to two doctors in Seaside for the cleft palate situation, and one surgeon has stated that his progress was satisfactory. She had not arranged for the child to receive speech therapy as suggested by the original attending physician in Kansas City. Respondent had recently divorced her second husband, with whom she had moved to Oregon so he might find better employment. She was staying there because of being near her parents. She has gainful employment in Seaside, and has a comfortable home. The record shows that the child continues to receive medical treatment. The trial court found: "The child has just turned three years of age; the mother is rearing the child in a comfortable home and the proper environment and to extract the child from this environment and place its care and custody in the father at this early age in the Court's judgment would be very disruptive to its best interests." Although appellant's evidence showed that he was remarried and had a stable home, that fact does not override the consideration of the best interests of the child, here one of tender years who is in need of further corrective surgical treatment, and who is getting along well with his mother, who, all else being equal, should be given the primary duty of caring for the child. *Dupree v. Dupree,* supra; *Simmons v. Trenter,* 327 S.W.2d 936 (Mo.App.1959); *Markham v. Markham,* 429 S.W.2d 320 (Mo. App.1968). The presumptions are with the trial court's order, which should not be lightly disturbed. *Kanady v. Kanady,* 527 S.W.2d 704 (Mo.App.1975). Point II is overruled.

What has been said as to Point II disposes of appellant's Point III, which is to the effect that he, showing a change of circumstances as to his ability to take care of the child, is entitled to custody. No conduct was in evidence, and of course was not found by the court, which should deprive respondent of her initial grant of custody. There is no showing that the fact that respondent lived with her second husband before she married him and moved to Oregon was in any way detrimental to the child. The fact of failure to accept child support payments from appellant is likewise not shown to have injured the child, and this matter was disposed by a later stipulation of the parties, November, 1976, dispensing with child support payments. The welfare of the child is the prime consideration, and the evidence shows that his custody should remain with respondent. *Hinson v. Hinson,* 518 S.W.2d 330 (Mo.App.1975). Point III is overruled. There is no firm belief that the trial court's decree is wrong, and it will therefore not be disturbed. *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976).

The motion to reopen the case to consider additional evidence is considered as a mere suggestion that the court exercise its discretion to set aside the judgment within the 30 day period specified in Rule 75.01. *State ex rel. Campbell v. Anderson,* 536 S.W.2d 200, 202 (Mo.App.1976). Here, the affidavit filed in support of the motion to reopen goes merely to contradicting respondent's testimony, and the overruling of

the same was within the trial court's discretion.

The judgment is affirmed.

All concur.