730 S.W.2d 543 (1987)
A.G., Respondent,
v.
R.M.D., Appellant.
No. 68584.
Supreme Court of Missouri, En Banc.
May 19, 1987.
Rehearing Denied June 16, 1987.
Robert D. Benjamin, Alan E. Freed, Clayton, for appellant.
Justin C. Cordonnier, Thomas B. Weaver, St. Louis, for respondent.
WELLIVER, Judge.
Appellant, R.M.D., appeals from the judgment of the Circuit Court of St. Louis County denying his motion for contempt against his ex-wife, A.G., for violation of provisions of their dissolution decree concerning R.M.D.'s visitation and temporary custody of their minor daughter, G.A.D. The Court of Appeals, Eastern District, reversed the circuit court and transferred the case to this Court due to the conflict which it perceived between its opinion and the Western District's opinion in Shanks v. Shanks, 603 S.W.2d 46 (Mo.App.1980). Mo. Const. art. V, § 10 and Rule 83.02. We reverse and remand.

I
This contempt action stems from the August 31, 1983, St. Louis County Circuit Court decree dissolving the marriage between R.M.D. and A.G., awarding A.G. custody of G.A.D. and awarding R.M.D. visitation rights. The decree specifically provided that:
6. Respondent is granted the following periods of visitation and temporary custody with the minor child [G.A.D.]:
A. From the date of this decree until the child reaches compulsory school age, Respondent shall have four (4) three (3) week periods of temporary custody upon *544 thirty (30) days written notice to Petitioner.
1. One (1) three (3) week period of temporary custody shall include Christmas in one year and the minor child's birthday in the alternating year, alternating every year thereafter.
2. One (1) three (3) week period of temporary custody shall include Easter.
3. The additional two (2), three (3) week periods of temporary custody are at the discretion of Respondent upon proper notice to Petitioner.
B. Upon the minor child's reaching compulsory school age and attending school, Respondent shall have temporary custody of the minor child for the following periods of time:
1. Eight (8) weeks during the summer, upon thirty (30) days written notice to Petitioner.
2. One (1) week during the child's Spring break.
3. One-half (½) of the child's Christmas break, with the parties alternating the period including Christmas Eve and Christmas Day on a yearly basis.
C. Respondent shall have additional reasonable visitation and temporary custody of the minor child if he is in Massachusetts upon one (1) week notice that he will be in the area.
D. Respondent shall have reasonable telephone contact with the minor child.
A.G. complied with the order and allowed G.A.D. to visit R.M.D. in November and December of 1983 and in April and May of 1984. In two letters during the summer of 1984, A.G. refused R.M.D. his visitation rights. On August 22, 1984, R.M.D. filed a Motion for Contempt against A.G. for her violation of the court's order. On January 28, 1985, the court entered an Order and Stipulation on the Motion for Contempt, which provided in pertinent part:
STIPULATION AND ORDER
Respondent's Motion for Contempt called, the parties appear in person and by counsel, and stipulate and agree as follows:
1. On the evidence adduced, the Court makes no finding of contempt, but does retain jurisdiction and authority in this matter with regard to the enforcement and compliance of the parties with the terms set forth below.
2. The Court's Order of August 31, 1983, shall remain in full force and effect and the parties are ordered to comply subject to the terms of this Order.
. . . .
6. When [R.M.D.] is in Boston he shall be able to be with [G.A.D.] no less than five (5) continuous days, five (5) hours each day and at least one night overnight, subject to the counsel and advice of the therapist.
7. [R.M.D.] shall have temporary custody of [G.A.D.] for two (2) weeks in March, 1985, and for three (3) weeks in May of 1985. The visits shall occur unless the therapist finds that the time or duration of the visits would be directly harmful to [G.A.D.].
8. [R.M.D.] will have telephone contact with [G.A.D.] each week on Saturday between the hours of 4:00 p.m. and 7:00 p.m. (E.S.T.) and [A.G.] will have [G.A.D.] available at those times.
9. [A.G.] agrees that she will read to [G.A.D.] all letters written to [G.A.D.] by [R.M.D.] within a reasonable time of their receipt.
10. Transportation costs: The prior Order of this Court shall continue in full force and effect and the parties agree that they shall each pay one-half (½) of the costs of transporation for [R.M.D.] in February and [G.A.D.] in March and May.
11. The parties agree that Division 14 of the St. Louis County Circuit Court shall retain jurisdiction and authority over this matter for the purpose of enforcing this Order and that the parties may be liable for contempt for noncompliance with the terms of this Order.
In March 1985, R.M.D. attempted to exercise his visitation right. A.G. cut the visit short and did not allow an overnight visit, in contravention of the court's order. On March 6, 1985, R.M.D. filed this second *545 Motion for Contempt. Since March 1985, A.G. has repeatedly refused R.M.D. his visitation rights.
Since her parents' divorce in 1983, G.A.D. has had emotional problems. She began visiting a child psychiatrist, Dr. Chrisman, prior to R.M.D.'s first custodial visit in November 1983. After repeated visits, Dr. Chrisman determined that G.A.D.'s emotional problems were the result of the separation of her parents and the fear of being separated from her mother. He recommended that her visitation with R.M.D. be limited due to the stress associated with G.A.D.'s separation from her mother, A.G. While G.A.D. was visiting R.M.D. in December 1983, A.G. filed a child abuse hotline report against R.M.D. The Missouri Division of Family Services investigated the allegation and, on January 11, 1984, found the report to be unsubstantiated.
On March 18, 1985, less than two weeks after R.M.D. filed this second contempt motion, A.G. brought G.A.D. to see Dr. Cook a child psychologist. After repeated visits, Dr. Cook determined that G.A.D.'s emotional problems could have been the result of sexual abuse by her father, R.M.D.
On November 4, 1985, the circuit court found that A.G. had violated its order but denied the Motion for Contempt. The November 4, 1985 order provides:
Respondent's Motion to Cite for contempt heretofore argued and submitted is hereby denied.
The Court, in reaching this result, has made no determination as to the truth or falsity of the allegations by Petitioner that Respondent has abused the minor child. The Court does find, however, that Petitioner believed that this abuse had accurred [sic] and was acting in good faith when she denied Respondent access to the child.
The Court of Appeals, Eastern District, reversed and transferred the cause to this Court.

II
This judge-tried action is reviewable under the standard announced by this Court in Murphy v. Carron, 536 S.W.2d 30 (Mo. 1976). In Murphy, we held that a judgment must be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Murphy, 536 S.W.2d at 32.
Appellant claims that the trial court erroneously declared and applied the law by excusing A.G.'s disobedience of its order because of her good faith belief that R.M.D. had sexually abused G.A.D. We agree.
Contempt may be either civil or criminal. A contempt action is civil if it is, as in this case, "instituted to preserve and enforce the rights of a private party to an action and to compel obedience to a judgment or decree intended to benefit such a private party litigant." State v. Koon, 356 Mo. 284, 201 S.W.2d 446 (1947). See also 17 C.J.S. Contempt § 62(6) (1963). Since R.M.D. brought this contempt action to compel A.G.'s obedience of the court order which benefited him, this is a civil contempt action.[1]
"For civil contempt `the general rule is that the defendant need not have acted wilfully....'" Chemical Fireproofing Corp. v. Bronska, 553 S.W.2d 710, 716 (Mo.App.1977), quoting Moskovitz, Contempt of Injunctions, Civil and Criminal, 43 Colum.L.Rev. 780, 795 (1943).
Respondent cites several cases which seem to apply a different standard by denying contempt for lack of "willful and intentional" violation of a court order. These cases merely mislabel the recognized defense of inability to comply with the court order.
For example, in Bopp v. Bopp, 671 S.W.2d 348 (Mo.App.1984), cited by Respondent, the ex-husband sought to have his wife cited for contempt for permitting their seventeen year old daughter to move *546 out of Missouri to attend school elsewhere, in violation of the court order. That court's denial of the contempt recognized the reality of the mother's inability to absolutely control the movement of a seventeen year old child. Similarly, in Shanks v. Shanks, 603 S.W.2d 46 (Mo.App.1980), also cited by Respondent, the court said there was not a "willful and intentional" violation, but recognized the inability of the custodial parent to exercise absolute control over her twelve year old child. In Shanks, the boy absolutely refused to board an airplane to visit his father, even though his mother repeatedly instructed him that he must do so.
In Durbin v. Durbin, 573 S.W.2d 146 (Mo.App.1978), the court refused to find in contempt a mother who requested a postponement of a custodial visit when the child was recovering from surgery.
In Blair v. Blair, 600 S.W.2d 143 (Mo. App.1980), the court concluded that
this court's research has not located any case in Missouri, discussing the burden of proof for contempt for failure to abide by a court order providing for child visitation or temorary custody. However, this court finds no distinction between this situation and the payment of maintenance and child support. The rule of affirmative defense in 17 C.J.S. Contempt § 84[2], p. 214, adopted in [In the Marriage of] Vanet, [544 S.W.2d 236 (Mo.App.1976) ] applies equally to a violation of child visitation or temporary custody as well as nonpayment of maintenance or child support.
Blair, 600 S.W.2d at 146.
We agree. The standard for contempt in maintenance and support cases is the proper standard here. In State ex rel. Stanhope v. Pratt, 533 S.W.2d 567 (Mo. banc 1976), a maintenance and support case, we found that contempt would lie if (1) there was an actual violation of the court's order and either (2) the alleged contemner was able to comply with the court order or (3) the alleged contemner "intentionally and contumaciously placed himself in a position so that he could not comply with the court's orders." Stanhope, 533 S.W.2d at 575. The movant bears the burden of demonstrating a violation of the court's orders. Then, the alleged contemner must prove the inability defense by showing inability which was not intentionally and contumaciously brought about. The courts in Bopp, Shanks, and Durbin properly denied the motions for contempt after finding that the party sought to be cited for contempt had proved an inability to comply and finding that the inability was neither intentional or contumacious.
Here, respondent has admitted to violating the court's orders. She claims, in essence, that her good faith belief that R.M.D. had abused G.A.D. and that the further communication and contact between R.M.D. and G.A.D. would be harmful to G.A.D. amounts to an inability to comply with the court's orders, as in Durbin, supra. Durbin is distinguishable since it involves a verifiable and documented illness which was not contemplated by the court issuing the order. Here, the trial court issued its Stipulation and Order with full knowledge that communication with the father would be stressful for the child. Durbin is also distinguishable since there the medical illness was documented while here the allegations of sexual abuse have not been proven and were even found to be unsubstantiated by the Missouri Division of Family Services on January 11, 1984. We cannot allow the decision of the trial judge, which considers both the fundamental parental rights of the father[2] and the interests of the child, to be supplanted by mental health professionals of Respondent's choice who consider only the child's interests.
If Respondent truly fears that her ex-husband may abuse her daughter, the proper remedy is for her to seek modification of *547 the court's orders. To hold otherwise would allow Respondent to sever R.M.D.'s parental rights unilaterally.
We find no conflict between our holding and the result reached on the facts in Shanks. To the extent that Shanks may be interpreted to have held that in child custody and visitation cases the sanction of civil contempt will not be imposed upon a party unless his disobedience is willful and intentional, Shanks conflicts with this opinion and should not be followed.
We reverse and remand to the circuit court.
All concur.
NOTES
[1] For this reason, Hofmeister v. Tod, 349 S.W.2d 5 (Mo. banc 1961), which was cited by Respondent and which involves criminal contempt is not applicable.
[2] "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents.... Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982).